R. Richard BASTIAN, III, et al., Plaintiffs–Appellants,

v.

PETREN RESOURCES CORPORATION, et al., Defendants–Appellees.

No. 88–3299.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1989.
Decided Jan. 9, 1990.

Shelly B. Kulwin, Michael H. Moirano (argued), Nisen & Elliott, and James E. Dahl, Dahl & Moirano, Chicago, Ill., for plaintiffs-appellants.

Delilah Brummet, Kirkland & Ellis, William O'Connor, Zukowski, Rogers, Flood, McArdle & O'Connor, Stephen Novack (argued), Donald A. Tarkington, and Mitchell L. Marinello, Novack & Macey, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge,
POSNER, Circuit Judge, and
ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

In 1981 the plaintiffs invested $600,000 in oil and gas limited partnerships promoted by the defendants. The plaintiffs allege that, had it not been for the offering memoranda's misrepresentations and misleading omissions concerning the defendants' competence and integrity, the plaintiffs would not have invested in these partnerships, which by 1984 were worthless. The original complaint charged violations of Rule 10b–5 of the Securities and Exchange Commission, and the RICO statute (18 U.S.C. §§ 1961 *et seq.*), and sought damages equal to the investment. The district judge dismissed this complaint, but without prejudice, on the defendants' motion under Fed. R.Civ.P. 12(b)(6) to dismiss for failure to state a claim. 681 F.Supp. 530 (N.D.Ill. 1988). With respect to the RICO charge he found only a minor technical deficiency easily curable by filing an amended complaint. With respect to the Rule 10b–5 charge he found a more serious deficiency: a failure to allege "loss causation"—that is, that if the facts had been as represented by the defendants the value of the limited partnerships would not have declined. This deficiency, too, was potentially curable by an amendment to the complaint, but the judge warned the plaintiffs that if they alleged but later failed to prove loss causation he might impose sanctions on them under Fed. R.Civ.P. 11.

The plaintiffs filed an amended complaint, curing the RICO oversight, but they did not reallege a violation of Rule 10b–5. The district judge dismissed the amended complaint on the ground that proximate cause in a RICO case requires, much as in a Rule 10b–5 case, that the facts concealed or distorted were responsible for the decline in the value of the limited partnerships. The amended complaint contained no such allegation, no doubt for the same reason the plaintiffs had not amended their Rule 10b–5 count: they did not think they could prove loss causation. The dismissal this time was with prejudice, and so terminated the suit and set the stage for this appeal.

The defendants argue that having failed to include the Rule 10b–5 charge in the amended complaint, the plaintiffs have waived any challenge to the district judge's dismissal of that charge in the original complaint. We disagree. That dismissal was not an appealable order, because the dismissal of a complaint with leave to amend is not a final decision. *Harris v. Milwaukee County Circuit Court*, 886 F.2d 982, 984 (7th Cir.1989); 28 U.S.C. § 1291. There was no appealable order until Judge Duff dismissed the amended complaint with prejudice. When a final decision is appealed, the appeal brings up all previous rulings of the district judge adverse to the appellant. *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 569 (7th Cir.1989); *Disher v. Information Resources, Inc.*, 873 F.2d 136, 140–41 (7th Cir.1989). Otherwise there would be no way to obtain ap-

pellate review of those rulings, save for the exceptional few that were appealable regardless of finality.

■ It is not waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected. Had the plaintiffs repleaded their Rule 10b–5 charge without alleging loss causation, the judge would have dismissed the charge, not only with prejudice but with annoyance. If they had alleged loss causation, they would have abandoned their principal disagreement with Judge Duff, which is over whether such an allegation is necessary, and would indeed have exposed themselves to sanctions if, as we suspect, they have no evidence of loss causation. For if they had had sufficient evidence to satisfy Rule 11's requirement of a reasonable precomplaint inquiry, they would have amended their complaint, while reserving for appeal (should they lose in the district court) their contention that proof of loss causation is inessential.

■ The case is no different from one in which a district judge grants partial summary judgment for the defendant, dismissing one of the plaintiff's claims, and after a trial dismisses the rest of the claims. Except as permitted by Fed.R.Civ.P. 54(b), the plaintiff cannot appeal until all his claims have been dismissed, but when he does appeal he can bring up the grant of partial summary judgment. He need not request the district court to reexamine its earlier rulings.

■ We come to the merits. The plaintiffs argue that they should not be required to allege that, but for the circumstances that the fraud concealed, the investment that they were induced by the fraud to make would not have lost its value. They say it should be enough to allege that they would not have invested but for the fraud; for if they had not invested, they would not have lost their money, and the fraud was therefore the cause of their loss. They say they have no idea why their investment was wiped out and it does not matter; the defendants, being responsible for the disaster by having used fraud to induce the investment, must not be allowed to get off scot-free just because the plaintiffs do not know how the investment would have fared in the marketplace had the facts about the defendants' competence and integrity been as represented. As a fallback position the plaintiffs argue that the defendants should have the burden of proving what part (if any) of the loss would have occurred even if the defendants had been as competent and honest as represented.

■ Rule 10b–5 is not a complete scheme for remedying securities fraud. Indeed, it is just a declaration that securities fraud is unlawful. The right to bring a private action for damages that the rule has been held to confer is an implied right, *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971), and its dimensions and incidents are a common law growth nourished by analogies from the law of torts. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 744–49, 95 S.Ct. 1917, 1929–32, 44 L.Ed.2d 539 (1975); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 97 (10th Cir.1971); *Brennan v. Midwestern United Life Ins. Co.*, 259 F.Supp. 673, 680 (N.D.Ind.1966) (Eschbach, J.); cf. *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 192–95, 84 S.Ct. 275, 283–85, 11 L.Ed.2d 237 (1963). All Rule 10b–5 does is supply the foundation upon which federal judges have built a federal common law of securities fraud. *Starkman v. Marathon Oil Co.*, 772 F.2d 231, 238 (6th Cir.1985). It would be surprising therefore if the rules that have evolved over many years to establish the contours of common law actions for fraud and other intentional torts were entirely inapplicable to suits under Rule 10b–5, and of course they are not. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

■ Indeed what securities lawyers call "loss causation" *is* the standard common law fraud rule (on which see Prosser and Keeton on the Law of Torts § 110, at p. 767 (5th ed. 1984)), merely borrowed for use in federal securities fraud cases. It is

more fundamental still; it is an instance of the common law's universal requirement that the tort plaintiff prove causation. *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir.1982). No hurt, no tort. *Heil v. Morrison Knudsen Corp.*, 863 F.2d 546, 550 (7th Cir.1988). Forget fraud for a moment and consider a standard medical malpractice case. The plaintiff's decedent goes to the defendant for medical treatment, receives incompetent treatment, dies. The plaintiff must allege that, had it not been for the incompetent treatment, his decedent would have lived (or lived longer). It is no answer that the plaintiff cannot be expected to know *why* his decedent died; it is his burden to gather enough information on the matter in advance of filing suit to comply (if the suit is in federal court) with Rule 11's requirement of a reasonable precomplaint inquiry. Even if the defendant in our hypothetical malpractice case had been a veterinarian passing himself off as a physician, the plaintiff would have to show that the defendant had failed to meet the standard of care of a physician. Prosser and Keeton on the Law of Torts, *supra*, § 36, at p. 226.

The plaintiffs alleged that they invested in the defendants' limited partnerships because of the defendants' misrepresentations, and that their investment was wiped out. But they suggest no reason *why* the investment was wiped out. They have alleged the cause of their entering into the transaction in which they lost money but not the cause of the transaction's turning out to be a losing one. It happens that 1981 was a peak year for oil prices and that those prices declined steadily in the succeeding years. U.S. Dept. of Commerce, Bureau of the Census, Statistical Abstract of the United States, 1989, at 677 (tab. 1181). When this happened the profitability of drilling for oil (and gas, which generally is produced with it) in the continental United States plummeted. The costs of obtaining oil and gas from our depleted reservoirs are far higher than the costs in other regions, and drilling for oil and gas is therefore profitable only in times when prices are very high. Suppose that because of the unexpected drop in oil prices

after 1981, all or the vast majority of the oil and gas limited partnerships formed in 1981 became worthless. Then it would be highly unlikely that the plaintiffs' loss was due to the defendants' fraud. If the defendants had come clean in their offering memoranda, then we may assume—because the plaintiffs allege, and the case was dismissed on the complaint—that the plaintiffs would not have invested in the defendants' limited partnerships. But there were plenty of other oil and gas limited partnerships they could have invested in. They wanted to invest in oil and gas limited partnerships; they only wanted to be sure that the general partners were honest and competent people. Yet to be honest and competent is not to be gifted with prevision. If the alternative oil and gas limited partnerships to which these plaintiffs would have turned had the defendants leveled with them were also doomed, despite competent and honest management, to become worthless, the plaintiffs were not hurt by the fraud; it affected the place but not the time or amount of their loss.

To satisfy Rule 11 all that the plaintiffs had to do was to obtain evidence from persons knowledgeable about oil and gas ventures in the early 1980s that many or most oil and gas ventures had succeeded notwithstanding the downturn in price after 1981. Perhaps if the plaintiffs had conducted such a search they would have discovered, contrary to our speculation (and it is just that), that oil and gas ventures managed by competent and honest businessmen *had* survived the drop in oil prices. If so, this would support an inference that if the defendants had been as competent and honest as they represented themselves to be, they would not have lost the plaintiffs' $600,000. The plaintiffs' unwillingness to make this allegation in their amended complaint suggests to us that they may have made inquiry of experts in the oil and gas industry and discovered that the cause of the disaster was unrelated to the competence and honesty of the defendants.

If the plaintiffs would have lost their investment regardless of the fraud,

any award of damages to them would be a windfall. Other sections of the securities laws, such as section 12(2) of the 1933 Act, 15 U.S.C. § 77*l*, permit windfall recoveries, but we do not see how this helps the plaintiffs. Those sections deal with other conduct and some of them contain restrictions on liability that Rule 10b–5 does not. See, e.g., 15 U.S.C. § 77m; *Wilson v. Ruffa & Hanover, P.C.*, 844 F.2d 81, 84 (2d Cir. 1988). And proof of loss causation has been held to be required in some actions under section 12(2), *Wilson v. Ruffa & Hanover, P.C.*, *supra*, 844 F.2d at 85–86, while in actions under section 11 of the 1933 Act, 15 U.S.C. § 77k, absence of loss causation is an explicit defense. Rule 10b–5 has been interpreted to authorize the creation of a federal common law of securities fraud, and common law fraud is not actionable without proof of harm. No reason is given why Rule 10b–5 should be an exception to this principle.

■ "Loss causation" is an exotic name—perhaps an unhappy one, *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 931 (7th Cir.1988)—for the standard rule of tort law that the plaintiff must allege and prove that, but for the defendant's wrongdoing, the plaintiff would not have incurred the harm of which he complains. Like a stock-market crash, the collapse of oil prices in the early 1980s reverberated throughout the economy. Since the United States is a net importer of oil, the reverberations were for the most part good ones. But there were some losers. No social purpose would be served by encouraging everyone who suffers an investment loss because of an unanticipated change in market conditions to pick through offering memoranda with a fine-tooth comb in the hope of uncovering a misrepresentation. Defrauders are a bad lot and should be punished, but Rule 10b–5 does not make them insurers against national economic calamities. If the defendants' oil and gas ventures failed not because of the personal shortcomings that the defendants concealed but because of industry-wide phenomena that destroyed all or most such ventures, then the plaintiffs, given their demonstrated desire to invest in such ventures, lost nothing by reason of the defendants' fraud and have no claim to damages. *Sims v. Faestel*, 638 F.Supp. 1281 (E.D.Pa.1986), aff'd without opinion, 813 F.2d 399 (3d Cir.1987).

■ We have treated the question whether loss causation is an element of a claim for damages under Rule 10b–5 from the ground up because there is no controlling precedent in the Supreme Court or in this circuit, and because there are cases on both sides of the question in the other circuits, though they greatly preponderate in favor of the requirement and such conflict as there is appears to be within rather than among circuits. Compare *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 380–81 (2d Cir., 1974); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549–50 (5th Cir.), aff'd in part, rev'd in part on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Bennett v. United States Trust Co.*, 770 F.2d 308, 313–14 (2d Cir.1985), and *Currie v. Cayman Resources Corp.*, 835 F.2d 780, 785 (11th Cir. 1988), with *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 708–10 (2d Cir.1980), and *Bruschi v. Brown*, 876 F.2d 1526, 1530–31 (11th Cir.1989). Our cases either state in dictum, or assume, that the requirement does exist. *LHLC Corp. v. Cluett, Peabody & Corp.*, *supra*, 842 F.2d at 931; *Kademian v. Ladish Co.*, 792 F.2d 614, 628 n. 11 (7th Cir.1986); *First Interstate Bank v. Chapman & Cutler*, 837 F.2d 775, 779 (7th Cir.1988); *Rankow v. First Chicago Corp.*, 870 F.2d 356, 367 (7th Cir.1989). We have tried to explain why it should exist, and now we add a note on its scope which suggests that some of the cases that express disagreement with the doctrine may be reconcilable with it. Suppose a broker gives false assurances to his customer that an investment is risk-free. In fact it is risky, the risk materializes, the investment is lost. Here there can be no presumption that but for the misrepresentation the customer would have made an equally risky investment. On the contrary, the fact that the broker assured the customer that the investment was free of risk suggests that the customer was looking for

a safe investment. Liability in such a case (well illustrated by *Bruschi v. Brown, supra*, 876 F.2d at 1527) is therefore consistent with nonliability in a case such as the present. The plaintiffs in the present case were not told that oil and gas partnerships are risk-free. They knew they were assuming a risk that oil prices might drop unexpectedly. They are unwilling to try to prove that anything beyond the materializing of that risk caused their loss.

 Because "loss causation" is just an exotic name for a standard requirement of tort law, Judge Duff was also correct to dismiss the amended complaint. Cf. *Currie v. Cayman Resources Corp., supra*, 835 F.2d at 785–86. The plaintiffs would not allege that the defendants' violations of the RICO statute caused the investment loss that the plaintiffs seek by this lawsuit to recoup. A civil RICO suit requires pleading and proof of loss "by reason of" the defendant's violation. 18 U.S.C. § 1964(c). This means cause. *Haroco v. American National Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir.1984), aff'd per curiam, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Sperber v. Boesky*, 849 F.2d 60, 64 (2d Cir.1988); *Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir.1988). If the plaintiffs would have lost their shirts in the oil and gas business regardless of the defendants' violations of RICO, they have incurred no loss for which RICO provides a remedy.

The cases go further, by requiring not only cause but also "proximate cause." *Brandenburg v. Seidel, supra*, 859 F.2d at 1189; *Zervas v. Faulkner*, 861 F.2d 823, 834–35 (5th Cir.1988). This unfortunate bit of legal jargon is used to cut off liability, for a variety of special reasons, for harms caused by the defendant's conduct in the ordinary-language sense of "caused." Cf. *Rardin v. T & D Machine Handling, Inc.*, 890 F.2d 24 (7th Cir.1989). We need not explore the nature of these grounds in the

RICO setting, a subject canvassed in the *Zervas* and *Brandenburg* cases as well as in our own *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806 (7th Cir.1987). Some cases describe the requirement of showing loss causation in Rule 10b–5 as an element of proximate cause (*Currie v. Cayman Resources Corp., supra*, 835 F.2d at 785, for example), but we think it more accurately described as an element of cause, period. For if it is not established, the trier of fact can have no confidence that the plaintiff would be better off if the defendant had refrained from the unlawful act.

AFFIRMED.