**HARLYN SALES CORPORATION PROFIT SHARING PLAN and Harry Goodstadt, Plaintiffs/Appellees,**

**Marvin A. Miller, Patrick E. Cafferty and Stanley R. Wolfe, Appellees,**

v.

**KEMPER FINANCIAL SERVICES, INC., Kemper Financial Companies, Inc., and Kemper Corporation, Defendants/Appellants.**

No. 92–3228.

United States Court of Appeals, Seventh Circuit.

Argued April 30, 1993.

Decided Nov. 18, 1993.

Kevin M. Forde (argued), Mary Anne Mason, Patrick E. Cafferty, Marvin A. Miller, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL, Stanley R. Wolfe, Berger & Montague, Alvin J. Ivers, Philadelphia, PA, for plaintiffs-appellees.

Sidney I. Schenkier, Joan M. Hall, Douglas A. Graham, James L. Thompson (argued), J. Kevin McCall, Jenner & Block, Chicago, IL, for defendants-appellants.

Kevin M. Forde, Mary Anne Mason, Chicago, IL, for appellees.

Before CUMMINGS and MANION, Circuit Judges, and EISELE, Senior District Judge.*

EISELE, Senior District Judge.

This Appeal presents a very narrow issue: whether the trial judge abused his discretion in denying Rule 11 sanctions.

*Procedural History*

The case began when the plaintiffs filed a class action securities law complaint against five defendants including the Kemper defendants. Plaintiffs attempted to state claims on behalf of themselves and all other investors in the Government Plus Portfolio (hereinafter "Portfolio")—one of the portfolios in the Investment Portfolios mutual fund. The defendants moved to dismiss for failure to allege any injury or fraud. The motion was assigned to a Magistrate Judge for a Report and Recommendation. Upon the request of the defendants, consideration of class certifi-

---

* The Honorable Garnett Thomas Eisele, Senior District Judge for the Eastern District of Arkansas, is sitting by designation.

cation was deferred pending the resolution of the motions to dismiss. On October 4, 1990, the Magistrate Judge recommended that those motions be granted as to all defendants. The plaintiffs objected to the Report and Recommendation, but the District Court, on September 13, 1991, after briefing, entered an order adopting the Report and dismissing the Complaint. The plaintiffs did not appeal.

On December 13, 1991, the Kemper defendants filed a motion for sanctions under Rule 11 against the plaintiffs and their attorneys based on alleged deficiencies in the complaint. This motion was also referred to the Magistrate Judge who, on May 29, 1992, issued a Report and Recommendation (the "Second Report,") suggesting that the District Court find the plaintiffs' complaint so obviously failed to allege any loss, misrepresentation, or material non-disclosure, that it could not have been based on adequate pre-filing inquiry. The Magistrate Judge recommended Rule 11 sanctions in the amount of $30,000 to be imposed against the plaintiffs' attorneys. The plaintiffs objected to this Report and Recommendation. On August 20, 1992, the district court entered an order agreeing in part with the Magistrate Judge but rejecting the sanction recommendation. 142 F.R.D. 671. This appeal followed.

*Review of Record*

Plaintiffs' complaint alleged violations of Rule 10b–5, Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933. The action was filed on behalf of the named plaintiffs and on behalf of a class of all persons who purchased shares in the Portfolio over a two and one half year period. The complaint alleged that the defendants violated the securities laws by issuing a prospectus, registration statement, and sales literature which misled purchasers into believing that they would receive high current yields as Portfolio investors, coupled with the return of their principal upon redemption, without advising such investors that the Fund could return a portion of the purchasers' principal in a monthly "dividend" payment in order to maintain the high current yield. The plaintiffs claimed that they were injured by the alleged misrepresentations and omissions because they invested when they otherwise would not have done so and because they would have to pay deferred sales charges if they decided to withdraw from the Portfolio during the first six years after purchase.

There was no allegation that Portfolio had actually ever returned principal. Nor was there any allegation that any plaintiff had actually withdrawn from the Portfolio and thereby incurred any deferred sales charge. Plaintiff expressly sought both compensatory and injunctive relief, the latter "in the form of an order requiring defendants to make appropriate disclosure of the misstated or omitted facts and to permit withdrawal by class members without penalty."

The Kemper defendants' motion to dismiss and supporting brief argued that the complaint was deficient in failing to allege any injury, any actionable misrepresentations or omissions, or compliance with the applicable statutes of limitations. The defendants pointed out that plaintiffs suffered no injury because their investments had not decreased in value as a result of the alleged fraud, no principal had been returned and no plaintiff had incurred any contingent deferred sales charges. And they argued that the "mere possibility of a return of principal" in a dividend was not material. Finally, they contended that plaintiffs' position that they would not have invested in the Fund "but for" defendants' fraud did not state a sufficient "loss causation" claim under *Bastian v. Petren Resources Corp.*, 892 F.2d 680 (7th Cir.1990).

Plaintiffs responded to defendants' motions to dismiss by arguing that the materials did contain actionable misrepresentations and failed to disclose the ability to return principal. They also claimed that they suffered damages when they invested because they thereby became subject to deferred sales charges upon early withdrawal. They argued that they had adequately pled transaction and loss causation in accordance with *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928 (7th Cir.1988) and *Rankow v. First Chicago Corp.*, 870 F.2d 356 (7th Cir.1989). Plaintiffs claimed they suffered economic

damage in the form of an obligation to pay contingent sales charges.

The Magistrate Judge agreed with the defendants that the statements in the offering materials relating to "high yields" were goals, not promises, as a matter of law. Her report noted that principal had not been returned. And, since the plaintiffs conceded that such a return would not be subject to a deferred sales charge, they had "not explained how that could result in any damage to them." (App. p. 15) The Magistrate Judge, therefore, concluded that the plaintiffs failed to allege any injury. (App. p. 16–17) She cited the *LHLC* case but did not mention *Bastian.* She recommended that the complaint be dismissed as to all defendants.

In their objections to this Report and Recommendation plaintiffs repeated the contentions referred to above and also argued that the Complaint did not allege that the defendants had promised to maintain a high current yield. They contended that plaintiffs' claims were based not on the Fund's goals but on the combination of disclosure of the goal of seeking a high yield with the non-disclosure of the fact that one means used to attain the goal might be the return of principal. And they argued that plaintiffs suffered economic harm under *Rankow* because they invested in a fund that could return principal rather than in one which could not, and, to get out of the Fund they would have to pay a sales charge.

The district court essentially agreed with the Magistrate Judge and dismissed the complaint. When the Kemper defendants moved for Rule 11 sanctions some three months later, that motion was also referred to the Magistrate Judge.

The Magistrate Judge in her Second Report and Recommendation, issued May 29, 1992, concluded, without hearing, that Rule 11 sanctions were required because plaintiffs "could not demonstrate loss causation" and could not show "any misrepresentation, any material nondisclosure, or any loss." She rejected defendants' argument that plaintiffs' failure to adequately plead compliance with the statute of limitations for their section 11 claims was sanctionable.

The plaintiffs, in opposing the Magistrate Judge's recommendation of sanctions, argued that the complaint was supported by an adequate allegation of "economic injury" under existing law, or at least a credible argument for the extension of that law and by an adequate inquiry. In sum, they contended that their theories, though unsuccessful, were not sanctionable. They filed a long memorandum with 74 pages of exhibits in support of their position. The exhibits included an affidavit setting forth an economic theory relating to the materiality of the alleged omissions and affidavits describing the pretrial inquiry conducted by their attorneys. Plaintiffs argued that the assertions in their complaint were legally and factually plausible and that the affidavit of their expert supported their view that the alleged omission would be material.

On August 20, 1992, the district court in an eight page order denied defendants' motion for sanctions. Judge Norgle first reviewed the factual allegations. He pointed out that "allegedly, the literature for these securities promised a high current yield coupled with a return of principal upon redemption without disclosing a material fact: to maintain the promised high income payments, the monthly dividend check might include a portion of principal." He then discussed the bases for granting defendants' motion to dismiss. He noted the motion for Rule 11 sanctions and the Magistrate Judge's Report and Recommendation with respect thereto, and the plaintiffs' objections to those recommendations and their request for a *de novo* review of the sanctions issue.

Judge Norgle points out that under 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b) the district court upon *de novo* review may accept, reject or modify the Magistrate Judge's recommended decision:

"In making this decision the judge must look at all the evidence contained in the record and retains final authority over the determination of the disposition motion."

He then ruled: "The Court has completely reviewed the Report and the arguments of counsel. The Court finds that Rule 11 sanc-

tions are not appropriate in the circumstances."

In his analysis Judge Norgle pointed out that "The main objective of Rule 11 is not to reward the victim of sanctionable conduct but to deter baseless filings and curb abuses." And in evaluating the attorney's conduct the court applied the "objectively reasonable standard."

Judge Norgle then made the critical findings:

The court finds the complaint was sufficiently grounded in fact and warranted by a good faith argument for extension of existing law to make Rule 11 sanctions unwarranted. First, plaintiffs' counsel's factual and legal inquiry was reasonable. Plaintiffs' counsel submitted by way of affidavit, and this court accepts, that a six-month investigation was conducted prior to the filing of the complaint. Second, the defendants do not contend, and the magistrate judge did not find, that plaintiffs' counsel filed the cause of action in bad faith or for an improper purpose.

Third, the theories plaintiffs' counsel asserted were objectively good faith arguments for the extension of the law. Plaintiffs' counsel's arguments concerning the interpretation of the cases relied upon for their position, although not adopted by the court, were not "preposterous." See *Thornton v. Wahl*, 787 F.2d 1151, 1153–54 (7th Cir.) (sanctions imposed for counsel's preposterous position), *cert. denied* 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986). Plaintiffs' counsel supported their loss causation theory with authority and this court cannot conclude that their arguments were unrealistic. Plaintiffs' counsel attempted to persuade the court to stretch the loss causation theory to cover plaintiffs' predicament, e.g., that the deferred sales charge imposed will create a loss if they redeem their shares less than seven years after the purchase of the securities. Fourth, although the magistrate judge determined that it should have been apparent from the investigation that the literature did not contain any "promises," plaintiffs' counsel did not ground the complaint on explicit "promises" in the literature. The plaintiffs' theory centered around the message generated from the literature as a whole coupled with the failure to disclose that they believed, and what their investigation seemed to indicate, was material. Plaintiffs contended that the defendants represented that they were seeking a goal of a current maximum return but did not disclose that one of its methods of achieving this return was a return of a portion of an investor's principal. Plaintiffs' counsel supported their allegations with examples of the various literature upon which they relied. These samples adequately supported the contention that the literature created an impression that investors would receive a current maximum return.

The district judge then concluded:

The court is concerned Rule 11 sanctions in this case may only serve to chill zealous lawyering. Merely because plaintiffs' case proved to be weak, plaintiffs' counsel should not be reprimanded for trying to protect their clients' interests. The court will not impose sanctions on a party merely for losing its case on the pleadings. See *Ring v. R.J. Reynolds Indus., Inc.*, 597 F.Supp. 1277, 1281 (N.D.Ill.1984), *dismissed without opinion* and *aff'd without opinion*, 804 F.2d 143 (1986). In sum, the court finds that Rule 11 sanctions are inappropriate in the present situation.

Both parties to this appeal state that this court should apply an abuse of discretion standard in disposing of this appeal. However, Kemper appellants suggest in a footnote of their original brief and in their reply brief that the district court "may have erred" in applying a *de novo* standard of review when evaluating the Report and Recommendation of the Magistrate Judge. This is said to turn on whether the Magistrate Judge's decision concerned a dispositive or non-dispositive matter. Both parties, the Magistrate Judge, and the district judge below treated it as a non-dispositive matter subject to *de novo* review. The appellants now suggest we should take up and resolve this question because of uncertainty in the lower federal courts, particularly in the Northern District of Illinois. The district court noted that all parties proceeded under Rule 72(b). Deem-

ing the issue waived, it did not take it up and specifically resolve it. We agree with the district court and, therefore, will assume that it properly conducted a *de novo* review of the Magistrate Judge's Report and Recommendation. Our role therefore, is to review the district judge's decisions under an abuse of discretion standard.

The district court, in dealing with the sanction issues, had before it much more information than did the Magistrate Judge when she issued her Report and Recommendation. The plaintiff-appellees' objections to sanctions in the district court were supported by the affidavits of Stanley R. Wolfe and G. Edward De Seve. Mr. De Seve's affidavit dealt with the materiality of the defendants' failure to disclose its ability to return principal as part of periodic distributions to shareholders. That affidavit also dealt with economic harm allegedly suffered by investors in the fund as a result of that failure to disclose. Mr. De Seve observed that prepayment of principal from a portfolio of mortgage-based securities is usually the result of falling interest rates which result in homeowners refinancing their mortgages. He explains how this creates a risk for the investors in such securities:

> As the prepayments occur, an investor must seek a new investment. The lower interest rate available in the market, the higher amount of principal that must be reinvested to achieve the same return. This risk of reinvestment at a lower rate can materially affect the choice of securities by an investor.
>
> ... To the extent that the Fund were to distribute principal in order to maintain a high level of distribution, the investor would be exposed to investment risk.

In evaluating the initial investment, the investor should have taken into account the possibility that his principal might be returned in the form of a prepayment by the Fund. This was not disclosed. Had it been disclosed, it is likely that this factor would have been material in the investment decision. Instead of choosing the Fund, the investor might have chosen another Fund for the holding of the underlying securities themselves.

Brief of Appellees, p. 28–29.

If an investor learns of this possible risk and seeks to withdraw from the Fund then, according to Mr. DeSeve, the existence of the contingent deferred charge "could make such withdrawal uneconomic" resulting in the investor having to accept the undisclosed investment risk or having to pay a sales charge up to 5%. He concludes that because interest rates were declining in the period in question:

> ... significant damage could have been done to investors who were forced to reinvest the withdrawals in lower yielding investments. To add the contingent deferred sales charge, as well, would further reduce the yield available on any reinvestment of the withdrawals.

Brief of Appellees, p. 29–30.

Thus, appellees argue, the ability to prepay principal was material to the investment decision and could have caused potential investors to seek an alternative investment. Furthermore, the sales charge could make it uneconomical to withdraw and thus "continue the investor's exposure to investment risk."

The affidavit of Stanley R. Wolfe covered counsel's pre-filing investigation and inquiry. This affidavit and the record below fully support the district court's conclusion that the six-month pre-filing investigation and inquiry was reasonable.

Other information before the district judge showed that neither the Prospectus nor Registration Statement nor the sales literature pointed out that the Fund had the option to return an investor's principal in a monthly distribution to maintain yield. Plaintiffs state that this was first disclosed in the August 20, 1989, *Wall Street Journal.*

Plaintiffs–Appellees argued that they satisfied each standard of Rule 11 because their complaint was sufficiently grounded in fact and law with respect to misrepresentation or omissions, injury, loss causation and damages. They distinguished *Bastian* and the case of *FMC Corp. v. Boesky,* 727 F.Supp. 1182 (N.D.Ill.1989) upon which the defendants relied and they also submitted Judge

Charles L. Brieant's decision in *In Re Baldwin Limited Corp.*, MDL–581 (S.D.N.Y., 1988) in support of their damage theory. Mr. Wolfe was one of plaintiffs' counsel in the *Baldwin* case.

### Discussion

When Rule 11 was adopted it was obvious that it could turn into a battleground for satellite controversies wherein, in effect, the tail would wag the dog, potentially diverting judicial resources from the prompt disposition of the merits of controversies. But, on balance, the need to protect against meritless and frivolous claims and the need to have appropriate sanctions to enforce professional ethical standards, and party and attorney discipline, prevailed. The "jury may still be out" on the efficacy and, perhaps, the efficiency of the Rule, but it is the Court's duty to enforce it. This case illustrates the tensions created by these opposite concerns.

In *Mars Steel Corporation v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir.1989) this Court recognized that the sanctuary given as a result of reasonable investigation "ensures that counsel may take novel innovative positions" and that Rule 11 "does not jeopardize aggressive advocacy or legal evolution." This is consistent with the position taken by the Advisory Committee on Rules in connection with the 1983 Amendment in which it observed that Rule 11:

> is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted.

Brief of Appellees, p. 12.

■ And *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1081–1082 (7th Cir.1987) instructs:

> The complaint need not and should not contain citations or legal argument. To find out whether it was the opening shot in a campaign for some new legal principle, a court must examine what lawyers later say about their work.... the only way to find out whether a complaint is an effort to

change the law is to examine with care the arguments counsel later adduce.

The district court in analyzing a Rule 11 sanction claim should determine if there has been a "callous disregard for governing law or the procedures of the court ..." *Allison v. Dugan,* 951 F.2d 828, 834 (7th Cir.1992).

■ It is important for federal courts, district and appellate, to keep in mind the serious consequences that can flow from an award of sanctions against an attorney. As explained in *FDIC v. Tekfen Construction and Installation Co., Inc.,* 847 F.2d 440, 444 (7th Cir.1988):

> While the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution. Even where, as here, the monetary penalty is low, a Rule 11 violation carries intangible costs for the punished lawyer or firm. A lawyer's reputation for integrity, thoroughness and competence is his or her bread and butter. We may not impugn the reputation without carefully analyzing the legal and factual sufficiency of the arguments.

So, while sanctions *must* be applied in certain situations, when the issue is not free from doubt we should accord great deference to the judgment of the district court.

■ We are convinced that neither the facts nor the law cited by appellants *require* this court to reverse the decision of the district judge. On the contrary, the record provides ample grounds for the exercise of judicial discretion. And, clearly, under the facts and circumstances of this case, Judge Norgle did not abuse that discretion.

On this record it cannot be said that competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in the complaint or in their arguments in opposition to the defendants' motion to dismiss.

■ The pertinent portion of Rule 11 provides:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record ... The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion,

or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . .

Defendants-appellants state that upon a finding that the rule has been violated, the imposition of sanctions is mandatory. They also contend that the court must use an objective standard in determining whether a party's prefiling inquiry was reasonable. We agree. But the Court must first determine if the attorney signing the pleading subjectively believed that what is stated in that pleading "is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law and that it is not interposed from any improper purpose . . ." To this extent the Court is examining the subjective "belief" and "purpose" of the attorney signing the pleading. But it is not enough that the attorneys' subjective belief and purpose are innocent; it is also necessary that such mental state be based upon reasonable inquiry, objectively analyzed, into the basis for the facts alleged and into the law. Defendants-appellants acknowledge that sanctions do not inevitably flow from being wrong on the law. Otherwise Rule 11 sanctions would be imposed whenever a complaint was dismissed, thereby transforming it into a fee shifting statute under which the loser pays. This circuit has made it clear the Rule may not be so interpreted. See *Mars Steel Corporation v. Continental Bank, N.A., supra.*

We confirm that considerable discretion is placed in the district court in analyzing the case, the behavior of the attorneys, and the applicable law, to determine if the requirements of Rule 11 have been met. On this same record Judge Norgle could possibly have come to a different conclusion. And that conclusion, too, might well have been supported by this record. This is but another way of describing the range of discretion afforded the district judge in a case of this type. But the decision to grant or deny sanctions would reflect the Court's judgment as to the effect of the information in the record and the inferences to be drawn therefrom as supporting or failing to support a violation of Rule 11. We do not believe that our decision in *Bastian v. Petren Resources Corp.*, 892 F.2d 680 (7th Cir.1990) as clear as it is, would, in the light of the facts and circumstances in this record, foreclose Judge Norgle's judgment that sanctions should not be imposed in this case.

Accordingly, we affirm the district court's denial of sanctions based upon its de novo review of the record.