[redacted]

**CAREMARK INC., a California corporation, and Caremark International Inc., a Delaware corporation, Plaintiffs,**

**v.**

**CORAM HEALTHCARE CORPORATION, a Delaware corporation, Defendant.**

**No. 95 C 5878.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 3, 1996.

[redacted]

Sheldon Toby Zenner, Mary Ellen Hennessy, Sean M. Berkowitz, Katten, Muchin & Zavis, Chicago, IL, for plaintiffs.

Don A. Banta, Banta, Cox & Hennessy, Chicago, IL, Janice M. Rauen, Abrahamson & Vorachek, Chicago, IL, Peter C. John, Thomas L. Duston, Matthew Michael Getter, Hedlund, Hanley & John, Chicago, IL, Michael A. Kahn, Samuel R. Miller, Douglas W. Sullivan, Katharine Livingston, Folger & Levin, San Francisco, CA, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiffs, Caremark Inc. and Caremark International Inc. (collectively "Caremark"), have filed suit against Coram Healthcare Corporation ("Coram"), alleging, *inter alia,* a violation of the federal securities laws. Coram has filed a motion to dismiss the complaint. For the reasons stated below, its motion is granted.

### Background

On April 6, 1995, Caremark sold its home infusion business to Coram, a competitor in the health care market.[1] Coram paid Caremark $209 million in cash and $100 million in the form of two ten-year notes ("the Notes") from Coram. These Notes were a $75 million, 7% Convertible Subordinated Note and a $25 million, 12% Non-convertible Subordinated Note. Caremark accepted these securities,[2] based, in part, on Coram's representation that its business strategy was to focus on its home infusion business and integrate the assets acquired from Caremark into that business.

While negotiating the details of the Caremark purchase, Coram was also pursuing an acquisition of Lincare Corporation ("Lincare"), a respiratory therapy services provider. Coram did not inform Caremark of its attempts to acquire Lincare (hereinafter "the Lincare negotiations" or "the Lincare deal"). Twelve days after Caremark and Coram closed their deal, Coram announced that it had reached a merger agreement with Lincare. The next day, Coram's stock fell from $25 per share to $21 per share and thereafter continued to fall in price. In July of 1995, Coram and Lincare announced that their agreement had been rescinded and they had terminated their plans to merge.

Caremark claims that the Notes it received from Coram have dropped in value due to the Lincare negotiations. Caremark contends that Coram should have been using its resources to attain a successful integration of Caremark's home infusion business with its own. Caremark claims that had it known about the Lincare negotiations, it would have reevaluated its decision to accept the Notes in exchange for its home infusion assets. Caremark has therefore filed this suit.

### Analysis

When deciding a motion to dismiss the court must accept all well pleaded allegations in the plaintiff's complaint as true. *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991). Additionally, the court must make all reasonable inferences from those facts in the plaintiff's favor. *Id.* The court should not dismiss the complaint unless it is clear the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

In Count I of its complaint, Caremark alleges that Coram violated Rule 10b–5, promulgated under § 10(b) of the 1934 Act, by failing to disclose the Lincare negotiations. *See* 15 U.S.C. § 78j(b) (1981); 17 C.F.R. § 240.10b–5. The parties do not dispute that to state a claim under Rule 10b–5, Caremark must allege "loss causation," in addition to "transaction causation." *See Bastian v. Petren Resources Corp.,* 892 F.2d 680, 683–86 (7th Cir.), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990) (holding

---

1. Home infusion allows patients requiring infusion therapy (i.e. intra-venous drugs or nutrition) to obtain this therapy without going to a hospital, either at their own home or at an ambulatory infusion therapy facility.

2. Neither party disputes that the Notes are securities within the meaning of the federal securities laws.

that "loss causation" is a necessary element of a Rule 10b–5 claim). *See also Pommer v. Medtest Corp.*, 961 F.2d 620, 628 (7th Cir. 1992) (defining "loss causation" as the principle that "the plaintiff must establish that the misstatement caused him to incur the loss of which he complains; it is not enough to establish that the misrepresentation caused him to buy or sell the securities"). To demonstrate loss causation, Caremark must allege "that the economic harm that it suffered *occurred as a result of* the alleged misrepresentations." *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1495 (2d Cir.1992) (emphasis in original).

■ To show economic harm, Caremark points to the decreased stock price of Coram's stock. Coram correctly points out, however, that Caremark never purchased Coram stock. Caremark received Notes from Coram which, until April of 1996, are interest only and not convertible for stock. As Coram points out, Caremark does not allege that Coram has missed any payments under the Notes. Caremark responds by claiming that the Notes it received from Coram in exchange for its home infusion business have lost value because Coram's stock price has fallen. Caremark argues that the Notes may be traded in a secondary market, with the value of those notes determined, in part, by Coram's stock price.

Caremark claims that it would have placed a lower value on the Notes had it known about Coram's plans to acquire Lincare. Caremark contends that its loss, *i.e.*, the Notes are worth less than they should be (or Caremark thought they were), was caused by Coram's failure to divulge the Lincare negotiations. Caremark claims that it paid a higher price for the Notes than it would have, had it know about the Lincare deal. *See, e.g., TFG, Inc. v. Sullivan*, No. 86 C 4176, 1988 WL 40898, at *1 (N.D.Ill. April 26, 1988) (" 'Selling a security for too little and purchasing it for too much are the most common injuries arising from a misleading statement or concealment of inside information.' ") (quoting 5A A. JACOBS, LITIGATION PRACTICE UNDER RULE 10B–5 § 64.03 at 3–352

(1987)). Coram argues that because the Lincare merger was never executed, Caremark cannot establish that any loss in the value of Notes was caused by the Lincare deal.

Caremark responds by claiming that the harm to the Notes' value was caused by Coram "expend[ing] its time, energy, and financial resources" attempting to acquire Lincare, rather than concentrating on integrating Caremark's home infusion business. According to Caremark, if Coram had put its efforts toward a successful integration rather than toward negotiating the Lincare deal, Coram's stock would not have dropped in value. Caremark, however, admits that it would have no cause to complain if Coram had been negotiating with a home infusion company.[3] If that were the case, Coram would have similarly expended resources on negotiations, diverting those resources from the task of integrating Caremark's business. Caremark does not allege that negotiating to acquire Lincare diverted more resources from the integration process than negotiating to acquire another home infusion business would have. Moreover, it would be impossible for Caremark to prove any such an allegation. Because Coram's 10–K allowed it to pursue, at the very least, an acquisition of *any* home infusion provider it chose, Caremark could never prove that the Lincare negotiations were more extensive and resource-consuming than negotiations would have been between Coram and a home infusion company.

By its own admission, Caremark figured (or should have figured) the chance that Coram would attempt to acquire another company (albeit a home infusion company) into the price it was willing to pay for the Notes. Caremark cannot, therefore, claim that the price it paid was too high as a result of the resources Coram expended negotiating with Lincare. Without loss causation, Caremark's complaint cannot state a claim for a violation of Rule 10b–5 and is, accordingly, dismissed. *See Nielsen v. Greenwood*, 849 F.Supp. 1233, 1247 (N.D.Ill.1994) (dismissing 10b–5 claim

---

**3.** Caremark made this admission in response to Coram's argument that the Lincare negotiations

were not material and that Coram had no duty to disclose them to Caremark.

due to plaintiffs' failure to plead loss causation).[4]

### *Conclusion*

For the reasons stated above, Coram's motion to dismiss is granted.[5]

---

**4.** Because I find that Caremark's complaint does not allege loss causation and therefore does not state a claim for a Rule 10b–5 violation, I need not address any of the other elements of a Rule 10b–5 claim.

**5.** After dismissing the only count of Caremark's complaint over which I have original jurisdiction, I decline to exercise supplemental jurisdiction over Caremark's state law claims. *See* 28 U.S.C. § 1367(c)(3).