# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-1573

URBANO C. ALEJO,

*Plaintiff-Appellant*,

*v.*

GARY E. HELLER and KEITH HECKLER,[1]

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 94-CV-682-JPG—**J. Phil Gilbert**, *Judge*.

ARGUED FEBRUARY 19, 2003—DECIDED MAY 13, 2003

Before FLAUM, *Chief Judge,* COFFEY and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Prisoner-detainee Urbano C. Alejo was disciplined for failing to obey a federal correction officer's order that was issued in English. Alejo, a Spanish-speaking Cuban national, brought this *Bivens*-style action,

---

[1] The docket sheet for this appeal also lists as defendants-appellees K. Murphy, Fernando Castillo, and M.L. Batts. At no time in this appeal has Alejo made an argument that the dismissal of these defendants was in error. These defendants are therefore dismissed with prejudice from this appeal. *See also infra* note 2.

alleging various denials of due process based on his nationality and ethnicity. All but one of these claims—that Alejo was unconstitutionally disciplined for his failure to obey an order he could not understand—were dismissed for want of prosecution, a ruling that is not challenged here. What is challenged is (i) the district court's *sua sponte* dismissal without prejudice, at the threshold stage, of all but one of the prison-personnel defendants on account of Alejo's failure to allege their personal involvement, and (ii) the district court's subsequent dismissal of the remaining claim against defendant Lieutenant Gary Heller, because that claim necessarily asserted the invalidity of a disciplinary determination that had not previously been challenged. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. HISTORY

*Alejo's Background*

Alejo fled Cuba for the United States in 1980. Shortly after his arrival, the Immigration and Naturalization Service detained him and placed him in federal custody. Three years later, while in detention, Alejo was convicted and sentenced for conveying a weapon at a federal facility. Thereafter, in 1986, Alejo was convicted and sentenced for killing his cellmate.

During his sentence for murder, Alejo served time at various federal prisons, including the United States Penitentiary at Marion, Illinois ("USP Marion"), where the events giving rise to this action occurred. Alejo has completed his criminal sentence, but remains confined as an INS detainee.

*The Incident*

While at USP Marion, Alejo was housed in the prison's "B Unit" and was placed in the prison's "pretransfer" program, a unit and program designated for those prisoners and detainees who had maintained "clear conduct" during their recent history of incarceration and as a reward received special privileges, such as relaxed rules and the ability to work at a cable factory. As a condition for receiving these privileges, however, B-Unit inmates were subject to random strip searches.

In the afternoon of August 12, 1994, Alejo was stopped as he was leaving the dinner hall by USP Correction Officer Keith Heckler and ordered to strip. Alejo complied. Heckler then ordered Alejo *in English* to hand Heckler his clothes as he removed them. Heckler contends that Alejo refused this order, placing his clothes instead on a nearby wooden bench and telling Heckler *also in English* to pick them up himself.

Alejo denies this, and contends that although he understood Heckler's order to strip—having complied with such orders on occasions too numerous to list—he did not understand what Heckler was ordering him to do with his discarded clothes. It is undisputed that Alejo has difficulty understanding English. In fact, this was apparently known to prison officials at the time of the strip-search incident. A November 1993 prisoner report on Alejo described the extent of his grasp of the English language: "Caberra-Alejo does not speak English in any substantial manner and effective communication is only accomplished by use of an interpreter."

Nonetheless, Heckler reported Alejo's noncompliance to his superior, USP Lieutenant Gary Heller. Heller instructed Heckler to write him up for refusal to obey an order. Heckler did so, and after another lieutenant conducted a short investigation into the incident, which

revealed Alejo's defense that he had not understood the order, the report was referred to the prison disciplinary committee.

Three days later, the disciplinary committee convened to consider the incident report and determined that Alejo had willfully disobeyed Heckler's order. As a result, Alejo was removed from the B Unit and the pretransfer program.

On September 12, 1994, Alejo appealed the disciplinary-committee decision to the prison warden, who denied relief. Alejo then submitted an administrative appeal of the warden's decision to the regional director. But that appeal did not challenge the disciplinary committee's decision regarding the strip-search incident; instead, it challenged an unrelated disciplinary determination arising from a separate incident involving Alejo's possession of a razor blade, which had resulted in Alejo being placed in disciplinary segregation.

*The Lawsuit*

Rather than further pursuing his administrative appeal of the strip-search incident, on September 14, 1994, Alejo initiated this action by filing a *pro se* complaint written entirely in Spanish. The district court struck the complaint for noncompliance with Federal Rule of Civil Procedure 8(a), granting Alejo leave to refile. On March 27, 1995, Alejo filed his amended *pro se* complaint, written in English.

The amended complaint named Heller and Heckler, as well as various other prison officials, as defendants. But in Alejo's statement of his claim, only Heller is referred to by name. He described the defendants as "Gary E. Heller, and other John Does of the Bureau of Prisons," and accused them of violating his constitutional rights by (i) harassing

him on account of his Cuban ancestry and in retaliation for prior complaints about his custodial conditions, (ii) inflicting disproportionate punishment upon him also on account of his Cuban ancestry, and (iii) denying him Spanish-speaking interpreters when issuing orders and preventing him from meaningful access to the courts by refusing to address his administrative appeals written in Spanish.

On May 17, 1995, the district court granted Alejo permission to proceed *in forma pauperis*, but *sua sponte* dismissed Heckler and every other defendant except for Heller from the suit, finding that in his statement of claim, Alejo made no allegation that any of them were personally involved in the events giving rise to the suit. The dismissal regarding the other defendants was granted without prejudice, and the case against Heller was referred to a magistrate judge for further proceedings.

Heller moved for a more definite statement on July 24, 1995, a motion which the district court summarily denied a month later. On January 30, 1996, the district court appointed counsel for Alejo.

A year later, Heller filed a motion seeking dismissal or, alternatively, summary judgment on Alejo's claims, arguing that he was not personally involved in the events at issue and that even if he was, he did not violate any of Alejo's clearly established constitutional rights by advising Heckler to pursue disciplinary charges against Alejo and was therefore entitled to qualified immunity. Because Heller had relied on materials outside of the pleadings, the motion was treated as one for summary judgment.

In his report and recommendation issued June 17, 1997, the magistrate judge recommended rejection of Alejo's First Amendment access-to-the-courts claim and retention of the remaining claims. On August 19, 1997, the

district court adopted the report and recommendation in full, granting summary judgment in favor of Heller on the access-to-the-courts claim and denying relief as to the balance of the claims.

For the next three years, the case meandered through discovery and pretrial motions. On July 14, 2000, Heller filed his second motion for summary judgment, claiming that because success on Alejo's claims arising out of the strip-search incident would necessarily invalidate the disciplinary determination resulting from that incident, he was precluded from collaterally seeking damages relief without having first invalidated that determination directly. Heller noted that Alejo had not exhausted his administrative remedies to expunge that incident report or the decision of the disciplinary committee. Heller also reasserted his lack-of-personal-involvement and qualified-immunity arguments. On August 7, 2000, Alejo filed his response to the motion.

The magistrate judge agreed with Heller's position that this Circuit's precedent interpreting the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), required Alejo to invalidate the disciplinary determination before collaterally attacking it in a *Bivens*-style suit. On September 9, 2000, he recommended the complaint be dismissed. Alejo filed his objections to the magistrate judge's report and recommendation on September 25, 2000.

On November 13, 2000, the district judge adopted the report and recommendation and dismissed without prejudice Alejo's claims relating to the strip-search incident. The district judge recognized that in a decision issued August 11, 2000, we overruled our prior precedent applying *Heck* to prisoners who challenge only the conditions of their confinement, *DeWalt v. Carter*, 224 F.3d 607, 617-18 (7th Cir. 2000); however, he concluded that the invalidity of that prior precedent was "unrelated to the principles at issue in this case."

Further, the court ordered Alejo to show cause why it should not dismiss for want of prosecution any remaining claims that did not arise out of the strip-search incident. On February 22, 2001, the district court ruled on the show-cause order, finding that for several years Alejo had not mentioned any specific event other than the proceedings relating to the strip-search incident, and therefore the court dismissed without prejudice all remaining claims for want of prosecution. Having then dispensed with all of Alejo's claims, the district court entered final judgment pursuant to Federal Rule of Civil Procedure 58, and Alejo filed a timely notice of appeal.

Alejo's appeal challenges only the dismissal of Heckler for lack of personal involvement[2] and the dismissal of the claim arising out of the strip-search incident against Heller. Neither the grant of summary judgment on the First Amendment claim nor the want-of-prosecution dismissal of any remaining claims not arising from the August 12, 1994 strip-search incident are at issue here. We restrict our discussion accordingly.

## II. ANALYSIS

*Heckler's Dismissal*

Alejo attacks the district court's *sua sponte* decision—made at the threshold, *in forma pauperis* determination stage—to dismiss the claim against Heckler without prejudice because of Alejo's failure to allege facts

---

[2] Although this order also dismissed prison-official defendants "K. Murphy, Fernando Castillo, Mr. Miranda, Lt. Miliacia, M.L. Batts, Mr. Koillow, and Jesus Navarro," (R. 12) Alejo does not challenge the dismissal of these defendants. Our discussion is therefore restricted to the district court's ruling as applied to Heckler alone.

sufficient to establish Heckler's personal involvement in the allegedly unconstitutional conduct.

As an initial matter, Heckler argues that Alejo has waived any argument contesting Heckler's dismissal. Heckler's argument is that because he was dismissed *without* prejudice, a ruling which invited Alejo to amend his complaint to add allegations of Heckler's personal involvement, and because Alejo never amended his complaint to include these allegations, we should not now entertain his objections to the district court's prior dismissal.

We have squarely rejected this type of "waiver" argument previously and do so again here. *See Bastian v. Petren Res. Corp.*, 892 F.2d 680, 682 (7th Cir. 1990). Alejo argues that the dismissal of Heckler was erroneous—that his amended *pro se* complaint was sufficient to place Heckler on notice of his personal involvement and to state a claim against him, and as a result the complaint against him should not have been dismissed *sua sponte*. Alejo could not have challenged this dismissal on appeal at the time the decision was rendered, because the dismissal of a complaint without prejudice is generally not considered a final, appealable decision. *See id.*; *see also Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003); *Larkin v. Galloway*, 266 F.3d 718, 721 (7th Cir. 2001); *Furnace v. Bd. of Trustees of S. Ill. Univ.*, 218 F.3d 666, 669 (7th Cir. 2000). A final order was not rendered in this case until the court entered judgment pursuant to Rule 58. And "[w]hen a final decision is appealed, the appeal brings up all previous rulings of the district judge adverse to the appellant." *Bastian*, 892 F.2d at 682 (citing *Asset Allocations & Mgmt. Co. v. W. Employers Ins. Co.*, 892 F.2d 566, 569 (7th Cir. 1989)). Thus, this appeal presents Alejo with the opportunity to challenge all of the district court's prior adverse rulings. But if before this appeal Alejo would have amended his complaint in accordance with what he

now asserts was an erroneous ruling, he would have abandoned the principal arguments he raises here. *Cf. id.* at 683. Rather than signifying his surrender of the argument raised here, his refusal to amend reflects, if anything, his resolute adherence to it. We now turn to the merits.

This case was filed before the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"). Therefore—pre-PLRA—the court could have dismissed the claim against Heckler only if the court found Alejo's claim to be frivolous or malicious. *See* 28 U.S.C. § 1915(d) (1994); *Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 412 (7th Cir. 1997) ("[B]ecause [the petitioner's] appeal was filed before April 24, 1996, the effective date of the PLRA, we look to the former version of § 1915(d) to see if the claim was 'frivolous or malicious,' rather than asking in addition whether the proposed complaint failed to state a claim upon which relief can be granted, as the amended § 1915(e)(2)(B) requires."). Which is to say, it must have found that Alejo could "make no rational argument in law or fact to support his . . . claim for relief" against Heckler. *Williams v. Faulkner*, 837 F.2d 304, 307 (7th Cir. 1988), *affirmed sub nom.*, *Neitzke v. Williams*, 490 U.S. 319 (1989).

A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). Thus, even under the pre-PLRA standard of § 1915(d), we have upheld *sua sponte* dismissals by the district court when the plaintiff did not allege personal involvement on the part of the defendant. *See, e.g.*, *Walker*, 129 F.3d at 413 (citing *Whitford v. Boglino*, 63 F.3d 527, 530-31 (7th Cir. 1995)).

Here, Alejo's complaint does not allege that Heckler personally participated in or caused any allegedly unconsti-

tutional action.[3] Although he named nine defendants in his complaint, Alejo specifically accused only defendant *Heller* of violating his constitutional rights. Rather than make any personal allegations against Heckler, Alejo accused groups of unknown "John Does" of participating in the allegedly unconstitutional conduct.

Because of the factual circumstances in this case, that phrase is insufficient to allege Heckler's personal involvement. The phrase "John Does" is fatally overbroad in suggesting that an uncertain number of Bureau of Prisons officials, potentially from every level, participated in denying Alejo his constitutional rights. At the same time, "John Does" is fatally underinclusive, because it indicates that those defendants—other than Heller—who violated Alejo's constitutional rights were unknown to him. In fact, Alejo included Heckler as a named defendant at USP Marion, thus plainly indicating that Heckler was known to Alejo. Because only unknown John Does and Heller were alleged to be personally involved, it follows that Heckler was excluded from the claim.

To the extent that Alejo alleged unconstitutional conduct on behalf of USP officials that he knew and with whom he had personally interacted, he had the burden to name them specifically in his complaint. Absent this, the district court could not infer that Heckler was an unknown John Doe and was personally involved in the allegedly unconstitutional conduct. For this reason, the *sua sponte* dismissal of Heckler was proper.

---

[3] We have learned about Heckler's alleged interaction with Alejo during the strip-search incident at issue only by virtue of Heller's substantive motions, which included as exhibits Alejo's disciplinary records, the contemporaneous incident report that Heckler submitted, and Heller's declaration regarding the events. The amended complaint is silent regarding this specific incident and the actors involved.

*Heller's Dismissal*

In his report and recommendation on Heller's second motion for summary judgment issued September 9, 2000, the magistrate judge found that Alejo's claims arising out of the strip-search incident necessarily implied the invalidity of the disciplinary proceedings resulting from that incident. Citing *Heck* and *Miller v. Ind. Dept. of Corr.*, 75 F.3d 330 (7th Cir. 1996), the magistrate judge concluded that Alejo's civil-rights claim would not accrue until the decision to impose discipline had been reversed, expunged, declared invalid, or otherwise called into question. Citing our holding in *Stone-Bey v. Barnes*, 120 F.3d 718 (7th Cir. 1997), he then concluded that rather than staying the case until Alejo successfully challenged the validity of the underlying disciplinary proceedings (a decision that could cause the case to remain on the court's docket in perpetuity should Alejo's subsequent attempts never prove successful), the case should be dismissed without prejudice to allow Alejo to refile the claim at a later date should the disciplinary proceedings be invalidated. *See id.* at 721 (applying *Heck*'s favorable-termination requirement to all decisions by prison disciplinary boards that entail some finding of guilt in adjudicating a disciplinary charge).

The district judge adopted the report and recommendation, holding that *Heck* barred Alejo's *Bivens*-style claim. The district court held that dismissal without prejudice, rather than a stay, was the proper way to dispose of Alejo's suit. In reaching this position, the district court acknowledged that we had recently overruled *Stone-Bey*, *see Dewalt,* 224 F.3d at 618, but noted that the invalidity of the holding in *Stone-Bey* was "unrelated to the principles at issue in this case."

We disagree with that assessment. In *DeWalt*, this court recognized that "a prisoner may bring a § 1983

claim 'challenging the conditions of [his] confinement where [he] is unable to challenge the conditions through a petition for federal habeas corpus.'" *Id.* at 613 (quoting *Jenkins v. Haubert*, 179 F.3d 19, 21 (2d Cir. 1999)). In other words, our opinion in *DeWalt* holds that where a prisoner-litigant challenges only the conditions of confinement, rather than the fact or duration of his confinement, *Heck*'s favorable-termination requirement does not apply, because federal habeas corpus relief is not available. *See id.* at 617 (citing *Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999) (holding that habeas relief is restricted to claims for which the prisoner "is seeking to 'get out' of custody in some meaningful sense"), and *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (stating that if a prisoner is challenging "merely the conditions of his confinement his proper remedy is under civil rights law" and not federal habeas)).

Under *DeWalt*, Alejo's claim against Heller, which arose out of the strip-search disciplinary proceedings that resulted in his removal from the B-Unit and pretransfer programs, challenges the conditions of his confinement and cannot be barred by *Heck*. The district court's holding to the contrary was therefore erroneous.

Nevertheless, Heller argues that we should affirm the district court's dismissal on other grounds; namely, his summary-judgment arguments that he was not personally involved in the August 12, 1994 strip-search incident and that even if he was, he is entitled to qualified immunity. This Court has unequivocally stated that without cross-appeal, an appellee may not "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *United States ex rel. Stachulak v. Coughlin*, 520 F.2d 931, 937 (7th Cir. 1975) (quotations omitted). The district

court's dismissal without prejudice pursuant to its belief that *Heck* barred Alejo's claim was not a ruling on the merits, *see Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486, 494 (7th Cir. 2001), *cert. denied*, 535 U.S. 1034 (2002), whereas a grant of summary judgment on the basis of either of Heller's arguments would be. Accordingly, Heller seeks to enlarge his rights and supplement the district court's decree with a ruling on the merits that was not reached below. He cannot do this without filing a cross-appeal.

### III.  CONCLUSION

Because Alejo's complaint did not allege (and in fact precluded) Heckler's personal involvement in the alleged deprivation of Alejo's constitutional rights, the district court's *sua sponte* dismissal of Heckler at the *in forma pauperis* stage was proper. The district court, however, incorrectly decided that Alejo's *Bivens*-style claim against Heller was barred by *Heck*'s favorable-termination requirement. For these reasons, the dismissal of Keith Heckler is AFFIRMED, and the dismissal of the suit against Gary E. Heller is REVERSED and the case is REMANDED for further proceedings.

A true Copy:

      Teste:

 

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
