**David P. LUSZ, Jr., Plaintiff–Appellant,**

v.

**Augustus SCOTT, Jr., Warden, Lincoln Correctional Center, Michael T. Montcalm, Lieutenant, Internal Affairs, Frank Bramwell, Hearing Officer, et al., Defendants–Appellees.**

**No. 94–1601.**

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1997.

Decided Oct. 7, 1997.

Bret Andrew Rappaport, Chicago, IL, Jill A. Glickstein, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for Plaintiff–Appellant.

David R. Moreland, Tracey L.F. Benedict, Office of the Atty. Gen., Criminal Appeals Division, Springfield, IL, Erik G. Light (argued), Jacqueline M. Zydeck, Office of the Atty. Gen., Civil Appeals Division, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, BAUER, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

David P. Lusz, Jr. is no longer imprisoned, but while imprisoned at the Lincoln Correctional Center, he filed this § 1983 action. Lusz alleged that various prison officials, including Warden Augustus Scott, Jr., Internal Affairs Lieutenant Michael T. Montcalm, and Hearing Officer Frank Bramwell, violated his procedural due process rights in connection with a prison disciplinary hearing. In response, the defendant prison officials filed a motion for summary judgment, which the district court granted. Lusz appealed. We appointed counsel for Lusz to brief how *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), affects his § 1983 action, and any other issues which his counsel wished to raise. Because Lusz cannot maintain this suit under § 1983 in view of the limitations outlined in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), we dismiss.

### Background

Lusz was serving a six-year term for forgery at the Lincoln Correctional Center. On October 25, 1992, Lusz was placed under

investigation for smoking marijuana. Lieutenant Michael Montcalm, an internal affairs investigator at Lincoln, conducted that investigation. On November 5, 1992, Montcalm turned in a disciplinary report charging Lusz with violations of prison rules 203, pertaining to drugs, and 601, pertaining to conspiracy.

On November 6, 1992, the prison Adjustment Committee held a hearing on the charges against Lusz. The Committee summarized the evidence against Lusz as follows:

> Denies smoking any marijuana but admits that he knew that others were smoking marijuana and he was 'attempting to block the view of the tower' so he guesses he is guilty of conspiracy. States he refused to consent to a polygraph because they are inconclusive.

> At least five credible confidential inmate sources (names withheld for security reasons) verify Lusz smoked marijuana on the patio of HU # 1 on 11–25–92.

The Committee found Lusz guilty, revoked thirty days of Lusz's good time credit, and demoted Lusz to "B" grade for thirty days. Lusz filed a grievance with the Illinois Department of Corrections Administrative Review Board. Lusz's grievance concerned the Committee's refusal of his request to take a urinalysis test to prove that he did not smoke marijuana on the day in question. Lusz also denied that he ever admitted to attempting to block the tower guards' view of his fellow inmates' smoking marijuana on the patio below. On December 15, 1992, the Board affirmed the Committee's decision.

Pursuant to 42 U.S.C. § 1983, Lusz brought a *pro se* civil rights suit. Lusz alleged that the Adjustment Committee violated his Fifth and Fourteenth Amendment rights by denying him due process in connection with its guilty finding on the charges of drug use and conspiracy. Specifically, he alleged that he was not afforded witnesses to testify on his behalf, was not allowed to examine the confidential sources, and was

not given a written statement describing what the confidential sources said. He also alleged that the disciplinary hearing violated due process because the presiding hearing officer, Capt. Frank Bramwell, was biased against Lusz because Lusz was a known homosexual. Lusz sought nominal compensatory damages, $5,000 in punitive damages, and attorney's fees and costs.

The prison officials filed a motion for summary judgment. In response, Lusz argued for the first time (in the district court) that he should have been allowed to take a urinalysis test to prove that he did not smoke marijuana on the day in question. He also alleged that the other inmates accused of smoking marijuana with him were given the chance to submit to a urinalysis test to prove their innocence. The district court reached the merits of Lusz's claim and found that the disciplinary proceedings comported with due process. Specifically, the court inspected the disciplinary report which contained the confidential statements of other prisoners and concluded that the evidence against Lusz was reliable. The court also found that Lusz did not request that any witnesses testify before the Adjustment Committee and that the Adjustment Committee's summary adequately described its reasons for finding Lusz guilty. The district court therefore granted the defendants' motion for summary judgment.

Lusz appealed. This Court appointed counsel for Lusz to address the issue of how *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), affects his § 1983 action, along with any other issues which his counsel wished to raise.[1] Lusz maintains that the issues on appeal are: (1) how his challenge to the prison disciplinary proceedings is affected by *Heck v. Humphrey* and (2) whether due process requires that an inmate charged with drug use be allowed to take a drug test, when he is not allowed to confront the confidential witnesses against him.[2] However, because we find that

1. At the time of oral argument, the Supreme Court had granted *certiorari* for, but had not yet decided, *Edwards v. Balisok*.

2. In his reply brief in this Court, Lusz's counsel argues for the first time that the restricted availability of habeas relief under the Anti-terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, essentially bars the

application of *Heck v. Humphrey*. Lusz's counsel contends that he raised this argument for the first time in his reply brief because this Court's decision in *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (en banc), holding that the AEDPA applies to pending cases, had not yet been issued when Lusz's counsel filed his initial appellate brief. The defendants argue that Lusz waived his right to raise this argument by failing to raise

*Heck v. Humphrey* bars Lusz's claim, we do not reach the merits of Lusz's due process claim.

## Analysis

■ In *Heck v. Humphrey*, the Supreme Court recognized that civil rights cases filed by prisoners often lie "at the intersection of the two most fertile sources of federal-court-prisoner litigation—the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254." 512 U.S. at 480, 114 S.Ct. at 2368. With this in mind, the Court fashioned a test to determine whether a plaintiff prisoner's claim is cognizable under § 1983:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action

should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487, 114 S.Ct. at 2372.

■ *Heck* applies to judgments handed down in prison disciplinary proceedings. *Edwards v. Balisok*, —— U.S. ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *see also Stone–Bey v. Barnes*, 120 F.3d 718, 719 (7th Cir.1997); *Miller v. Indiana Dep't of Corrections*, 75 F.3d 330, 331 (7th Cir.1996). That is, "[t]he 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and if success on the plaintiff's section 1983 claim necessarily would imply the invalidity of that finding, then *Heck* bars the claim until such time as its requirements are satisfied." *Stone–Bey*, 120 F.3d 718, 719.

The issue in *Edwards v. Balisok* was whether a claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits was cognizable under § 1983. —— U.S. at ——, 117 S.Ct. at 1586. A similar issue is before us today, except that Lusz did not ask for declaratory relief. In *Edwards*, Balisok alleged that Edwards, the hearing officer at his disciplinary proceeding, concealed exculpatory witness statements and refused to ask specified questions of requested witnesses. *Id.* at ——, 117 S.Ct. at 1587. Balisok alleged that Edwards' actions prevented him from introducing some exculpatory evidence and that Edwards intentionally denied him the right to present witnesses in his defense. *Id.* Balisok further alleged that Edwards failed to provide a statement of the facts supporting the finding of guilt against him and that his appeal within the prison system was erroneously rejected for exceeding the established page limitation. *Id.* Balisok asked for damages only for depriving him of good-time credits without due process, not for undeservedly depriving him of good-time credits as a substantive matter. *Id.*

---

it in his opening brief. The defendants also point out that the AEDPA was signed into law over one month before Lusz's counsel's initial brief was due and that even if Lusz's counsel was unsure of whether the AEDPA would apply to pending cases, he could have briefed the issue on the assumption that it would.

However, regardless of waiver, this issue is water under the bridge; in *Lindh v. Murphy*, —— U.S. ——, ——, 117 S.Ct. 2059, 2061, 138 L.Ed.2d 481 (1997), the Supreme Court held that the section of the AEDPA dealing with petitions for habeas corpus does *not* govern applications in noncapital cases that were pending when the AEDPA was passed.

The Court held that a claim challenging only the procedure used in a prison disciplinary proceeding is not always cognizable under § 1983. *Id. Heck* clearly envisions that, notwithstanding how the plaintiff prisoner phrases his claim, the nature of the challenge to the hearing's procedure "could be such as necessarily to imply the invalidity of the judgment." *Id.* (citing *Heck,* 512 U.S. at 486 n. 6, 114 S.Ct. at 2372 n. 6).

The Court observed that in Balisok's case, he alleged that he was completely denied the ability to put on a defense by using witnesses whom he had identified and who possessed exculpatory evidence. *Id.* at ——, 117 S.Ct. at 1588. The Court found that this was an obvious procedural defect that, when established, would result in the reinstatement of good-time credits. *Id.* (citations omitted). Balisok also alleged that Edwards intentionally denied him the right to present evidence. *Id.* The Court found that this allegation, if established, would lead to Balisok's "conviction" being set aside, since convictions entered by partial judges are always set aside, no matter how compelling the evidence against the accused. *Id.* (citing *Tumey v. Ohio,* 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927); *Arizona v. Fulminante,* 499 U.S. 279, 308, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991)).

Lusz argues that if he prevails on his argument that due process required that he be allowed to take a drug test, it will not necessarily reverse the revocation of his good-time credits—he was also found guilty of the conspiracy charge. Lusz offers that only *some* evidence is necessary to support a finding of guilt by prison officials, and that his admission to the conspiracy constitutes "some evidence." *See Superintendent, Mass. Correctional Inst. at Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). This exact argument was rejected in *Edwards* as being irrelevant if the basis for attacking the judgment is not on sufficiency of the evidence grounds. *Edwards,* —— U.S. at ——, 117 S.Ct. at 1588. Lusz is not challenging the sufficiency of the evidence against him. The Adjustment Committee did not apportion which part of the punishment was imposed for which offense. Lusz contends that, therefore, a judgment in his favor as to the due process claim will not necessarily imply the invalidity of his conviction, i.e., the revocation of his good-time credits. That is, he likely would have had his good-time credits revoked anyway because he was guilty of the conspiracy charge.

Lusz seems to assume that his good-time credit revocation was based entirely on the conspiracy charge. He argues that if he had been allowed to take a drug test, he would have been exonerated on the drug charges. Consequently, the drug charges would have been expunged from his record. He maintains that he is only seeking expungement, not a restoration of good-time credit. Yet exoneration would have led to a restoration of at least some of his good-time credit, for, although the Adjustment Committee did not apportion Lusz's punishment, it is likely that some of the loss of good-time credit was due to the Committee's finding that Lusz smoked marijuana. A judgment in Lusz's favor would therefore likely imply the invalidity of the loss of at least some of his good-time credits.

 Some of the other issues raised by Lusz are virtually identical to those raised by Balisok in *Edwards v. Balisok.* Like Balisok, Lusz contends that he was denied the opportunity to call requested witnesses in his favor. This is an allegation of a procedural defect, which, if proven, would result in the reinstatement of good-time credits. *See Edwards,* —— U.S. at ——, 117 S.Ct. at 1588. Lusz also alleges that Bramwell was a partial hearing officer because of his bias towards Lusz's sexual orientation.[3] If proven, this

---

3. On September 11, 1992, Lusz requested to be moved to a different cell. Bramwell denied Lusz's request in writing, stating:

> Are you sure this is the reason or do you have other plans in dorm 8? I think we both know what I mean.
> If I hear you're wanting to move to dorm 8 to be near the ladies I will deal with you on the

adjustment committee. Why would a guy want to move from a single bunk to a double? I hope you recall our conversation because I've heard some interesting stories from the 4 young men in seg. about you! Your time is nearing so don't get too comfortable over there.

Bramwell apparently refers to suspicions that Lusz was engaged in illicit sexual activity. From

allegation would lead to Lusz's "conviction" being set aside because convictions entered by partial judges are always set aside. *See id.* These two contentions, like Lusz's drug test contention, cannot go forward because, if successful, they would necessarily imply the invalidity of Lusz's conviction, i.e., his revocation of good-time credit. As such, they are barred by *Heck.*

■ Finally, we consider Lusz's remaining contention. Lusz argues in his *pro se* brief that his due process rights were violated when he was not allowed to examine the confidential sources who allegedly witnessed the events on the prison patio and because he was not given a written statement of what these confidential sources said.[4] An inmate subjected to discipline is entitled to a written statement of the reasons and evidence relied on in his conviction. *See Wolff v. McDonnell,* 418 U.S. 539, 564–565, 94 S.Ct. 2963, 2978–2979, 41 L.Ed.2d 935 (1974). As we mentioned earlier, in their summary of the evidence, the Adjustment Committee noted that at least five credible confidential inmate sources, whose names were withheld for security reasons, verified that Lusz smoked marijuana on the patio. A written statement of what the confidential sources said was therefore likely part of the evidence relied on in Lusz's conviction, and Lusz claims that he was not given such a statement or statements.

A similar claim arose in *Edwards.* In *Edwards,* Balisok alleged that Edwards never gave him a statement of the facts supporting the finding of guilt against him. —— U.S.

at ——, 117 S.Ct. at 1587. Justice Ginsburg, joined by Justice Souter and Justice Breyer, stated that this kind of a defect, if proven, would not necessarily imply the invalidity of a prisoner's deprivation of good-time credits and is therefore immediately cognizable under § 1983. *Edwards,* —— U.S. at ——, 117 S.Ct. at 1589 (Ginsburg, J., concurring). However, Justice Scalia, writing for the majority, focused his attentions on Balisok's charge that because of Edwards' bias, Balisok was denied the opportunity to call witnesses in his defense who would offer exculpatory evidence. *Edwards,* —— U.S. at ——, 117 S.Ct. at 1588. Justice Scalia did not state whether he agreed with Justice Ginsburg's concurrence. *See Stone–Bey,* 120 F.3d 718, 720.

In *Stone–Bey,* Stone–Bey brought a § 1983 action, claiming that his due process rights were violated because the record of his prison disciplinary hearing was devoid of any reliable evidence supporting his finding of guilt and because the prison hearing officer failed to provide an adequate written record of the evidence relied upon to support his finding. *Id.* We found that acceptance of Stone–Bey's first claim would imply the invalidity of his conviction for threatening another inmate. *Id.* But we found that "[t]he impact for *Heck* purposes of Stone–Bey's second claim ... is less clear" because the majority in *Edwards* did not address Justice Ginsburg's position in her concurrence. *Id.*

However, we observed that, even assuming the concurring Justices in *Edwards* were correct, their position did not aid Stone–Bey.

what we can tell from Lusz's *pro se* appellate brief, this note forms the basis of Lusz's allegation that Bramwell was partial when he presided over Lusz's disciplinary hearing on the drug and conspiracy charges.

4. But in his appellate brief, filed after Lusz's *pro se* brief, Lusz's counsel acknowledged that "[a]n inmate's right to challenge the inculpatory evidence against him is severely limited (and in some cases necessarily so). For example, Lusz has no absolute right to cross-examine witnesses or to confront his accusers—two of the most basic of all due process rights." Brief for Appellant at 14 (citing *Baxter v. Palmigiano,* 425 U.S. 308, 322, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976)).

Lusz's counsel elaborated:
Lusz was not allowed to challenge the veracity of his accusers. The price of that restric-

tion is to allow him to use exculpatory evidence.... The refusal of prison officials to allow an inmate to testify or present witnesses violates due process.... Drug test results represent the same kind of evidence.

Brief for Appellant at 15 (internal and external citations omitted). It is therefore apparent that Lusz's counsel conceded that Lusz had no right to examine the confidential prison witnesses and instead argued that, to "ensure fundamental fairness," Lusz should be permitted to submit to a voluntary drug test as part of the exculpatory evidence which he had a right to present. Because Lusz's counsel conceded the issue, we need not address whether *Heck* bars Lusz's claim that due process required that he cross-examine the confidential witnesses against him.

1024

*Id.* Stone–Bey's claims were related "in the sense that the premise of both [was] the lack of any reliable evidence to support Barnes' [the hearing officer's] finding of guilt." *Id.* We considered Justice Ginsburg's concurrence, but we also noted that Stone–Bey had not offered that his second claim should be given separate treatment if we were to find that it alone was cognizable under § 1983. *Id.* We stated, "Stone–Bey, in other words, has never asked us to permit him to proceed on the second claim even if the first falls under *Heck*; he has instead treated the two claims as one for *Heck* purposes." *Id.*

We have a similar situation here, albeit with one difference—Stone-Bey's counsel in effect conceded that both of Stone–Bey's claims would be barred if the Supreme Court in *Edwards* were to agree with this Court that *Heck* applies in the prison disciplinary setting. *See id.* We do not have that exact situation. At oral argument, Lusz's counsel stated that if the Supreme Court in *Edwards* found that *Heck* applies to prison disciplinary hearings, Lusz can nevertheless proceed.

But Lusz's case is similar to Stone–Bey's in that Lusz's counsel treats his claims together when discussing the impact of *Heck*. In both his brief and at oral argument, Lusz's counsel framed the issues before this Court to be: (1) whether *Heck* applies to this case, i.e., whether § 1983 is a proper avenue of redress for Lusz's claims, and (2) whether an inmate has a right to submit to a drug test when he has been charged with drug use and prison officials rely on undisclosed, hearsay testimony to establish his guilt. Lusz's counsel never argued that even if we found his claim that he had a due process right to a drug test to be barred by *Heck*, we could permit him to proceed on his claim that he should have received a written record of the confidential sources' statements, which arguably is not barred by *Heck*. Indeed, Lusz's counsel in his appellate brief stated that we should hold: "Where a prisoner is charged with drug use and prison officials rely on confidential informants to support a finding of guilt, a prisoner has a due process right to a voluntary drug test, the results of which may be used as a basis to determine guilt or innocence." Brief for Appellant at 16.

Lusz presented his claim that due process required that he receive a copy of the written recording of the confidential witnesses' statements (which is arguably actionable under § 1983) in such a way that it was very much intertwined with Lusz's claims that due process required that he be permitted to take a voluntary drug test and that he have an unbiased hearing officer (both of which are barred by § 1983). Any argument that the claim not barred by § 1983 is extricable from the claims barred by § 1983 has therefore been waived. *See Stone–Bey*, 120 F.3d 718, 720. This does not mean that a similar claim in another case could not be "immediately cognizable under § 1983," *see Edwards*, —— U.S. at ——, 117 S.Ct. at 1589 (Ginsburg, J., concurring), but, given the facts in Lusz's case, it is not. *See Stone–Bey*, 120 F.3d 718, 720.

### Conclusion

With *Edwards* and *Stone–Bey* as our guideposts, we dismiss the action, finding that it is not a cognizable § 1983 action under *Heck v. Humphrey*.