Eric WALKER, Plaintiff–Appellant,

v.

**TAYLORVILLE CORRECTIONAL CENTER, et al., Defendants–Appellees.**

No. 94–2705.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1997.

Decided Nov. 5, 1997.

Jonathan S. Jennings (argued), Pattishall, McAuliffe, Newbury, Hiliard & Geraldson, Chicago, IL, for Plaintiff–Appellant.

Rita M. Novak, Office of the Attorney General, Jerald S. Post (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and ROVNER and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Sexual harassment does not necessarily occur only when a man harasses a woman, as Eric Walker's allegations illustrate. Walker was an inmate at Illinois's Taylorville Correctional Center who raised a variety of claims against Taylorville, a number of its employees, and other institutions, alleging violations of his civil rights under 42 U.S.C. § 1983. The district court denied his petition to pro-ceed *in forma pauperis* and dismissed the complaint, finding that it did not "articulate a violation of plaintiff's constitutional rights under color of state law" and that Walker had named some individuals and entities that could not be sued. Although we agree that most of Walker's complaint was correctly dismissed, we reverse the dismissal of his claim that correctional counselor Debbie Dinning sexually harassed him and remand for further proceedings.

Walker's *pro se* complaint alleged that in April of 1994, Dinning, a counselor for inmates in Taylorville housing unit four, sexually assaulted and harassed him on three different occasions. First, he claimed, on about April 18 and 19, 1994, Dinning sexually abused him by "rubbing plaintiff arme and stateing the word '(hone[y] )' [or perhaps 'bone'—the handwriting is unclear]," when he went to her for help concerning threats and harassment from other inmates. Next, on April 26 or 27, while Walker was in bed sleeping, Dinning allegedly put her hand under his blanket, "graded plaintiff penus and sroked it 3 or 4 times," and said "you know you like it, now come on its time to get up." Finally, two or three days later, as Walker was entering a shower, Dinning approached and told him "your not supposted to be tak-ening a shower this time of day," and then said "I've seen them bigger, but you got enought for me."

After the third alleged incident, Walker asked to see the Warden. Before he could do so, however, Dinning wrote him up and placed him in segregation, on the strength of a complaint from three other inmates accus-ing Walker of threatening to kill another inmate. Meanwhile (and, as far as we can tell, in a manner unrelated to the other alle-gations), Walker claimed that he repeatedly went to Dinning and co-defendant Bill Estes, who was a counselor for a Gateway Founda-tion drug program, for help with threats and harassment from other inmates. Neither one assisted him, nor did any of the other prison employees to whom Walker spoke.

On May 25, 1994, Walker filed his petition to proceed *in forma pauperis,* attached to which was his *pro se* complaint under 42 U.S.C. § 1983, in which he raised the follow-

ing claims: (1) he was deprived of his rights under the 8th and 4th Amendments to the U.S. Constitution when he was sexually assaulted by Dinning, (2) the defendants retaliated against him for exercising his rights under the First Amendment by threatening to kick him out of the Gateway drug program as a result of his complaints about inmate harassment to Estes and Dinning, and (3) he was unfairly disciplined and deprived of his right to procedural and substantive due process when he was placed in segregation. He named as defendants the Taylorville Correctional Center, the Gateway Foundation, Taylorville Warden Furrie, Bill Estes, and Debbie Dinning. In his complaint, Walker asked for restoration of 90 days' good time credit and $5 million in damages. (In his appellate brief, by contrast, he appears to use the taking of the 90 days' credit only as a measure of his $5 million claim for damages. He never expressly renews a request for restoration of the 90 days.)

■ After his IFP petition was filed, Walker also filed a motion for a temporary restraining order and another motion for a preliminary injunction, to which he attached additional information and, it seems, additional claims. In the preliminary injunction motion, for example, he alleged that he was afraid the defendants would open his legal mail outside of his presence. We do not consider these claims, as they were never added to the proposed complaint by amendment or otherwise properly presented to the district court. Nor do we consider the additional materials Walker filed, which would take this matter beyond the scope of Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915. Instead, we confine our inquiry to the question whether the district court correctly denied Walker's petition to proceed IFP and, upon Walker's failure to pay the required filing fee, correctly dismissed the complaint.

■ Initially, we note that because Walker's petition was filed in the district court in May 1994, and his initial brief was filed in this court on July 10, 1995, we apply the version of 28 U.S.C. § 1915 that existed prior to the enactment of the Prison Litigation Reform Act of 1996, Pub.L. No. 104–134. We noted in *Robbins v. Switzer*, 104 F.3d

895, 897 (7th Cir.1997), that the financial filing "obligations under the [PLRA] depend entirely on the filing date of the appeal." Also, as in *Hutchinson v. Spink*, 126 F.3d 895, 897 (7th Cir.1997), because Walker's appeal was filed before April 24, 1996, the effective date of the PLRA, we look to the former version of § 1915(d) to see if the claim was "frivolous or malicious," rather than asking in addition whether the proposed complaint failed to state a claim upon which relief can be granted, as the amended § 1915(e)(2)(B) requires.

The district court dismissed the complaint before it as frivolous, finding that even though Walker was indigent, the complaint failed to state "an arguable cause of action under the Civil Rights Act." It concluded that "Dinning did not sexually harass the plaintiff 'under color of state law,' and the plaintiff has raised no constitutional challenge to the disciplinary proceedings against him." Elaborating its finding with respect to Dinning, the court held that she was not exercising power conferred by state law, but rather was pursuing her own interests, at the time of the alleged harassment. It also found Walker's allegations utterly lacking with respect to Dinning's disciplinary report and the purported failure of the other defendants to take action on his complaints about threats and harassment by other inmates. Last, as we have already mentioned, the court found that Taylorville Correctional Center and the Gateway Foundation were not suable entities for purposes of § 1983. The allegations against Furrie failed because the complaint did not so much as assert that he was involved directly and personally, or that anything was done with his knowledge and consent. The court did not mention Estes by name, although its rationale with respect to the allegations against Dinning that related to inmate harassment appear to apply to him as well, since it referred to "defendants" in the plural.

■ We agree with the district court that Walker's allegations against Warden Furrie, Estes, and Dinning for counts other than the sexual harassment allegations were frivolous and did not even arguably state a claim against them. (Because Walker does

not appeal the district court's dismissal of Taylorville and Gateway, we do not address those claims further.) First, to the extent that these claims relate to the outcome of his disciplinary proceedings, they are barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and *Edwards v. Balisok,* —— U.S. ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). See also *Lusz v. Scott,* 126 F.3d 1018, 1021–22 (7th Cir.1997). Walker cannot maintain a § 1983 action, whether for restoration of good time credits or for damages, if a judgment in his favor would necessarily imply the invalidity of the outcome of the disciplinary proceeding.

■ To the extent Walker is trying to assert claims unrelated to the disciplinary proceeding, his suit still fails against Furrie, Estes, and Dinning apart from the sexual harassment claim. Walker has not alleged the personal involvement required by our cases to support a claim against Furrie under any of his theories. See Whitford v. Boglino, 63 F.3d 527, 530–31 (7th Cir.1995). Similarly, the claims against Estes and Dinning for failure to take action to protect him contained the seeds of their own destruction. Walker never alleged that his disciplinary ticket was based on fabricated information or that it was retaliatory, nor does he claim that the proceedings themselves denied him due process. (As we noted above, such a claim would be futile in any event after *Balisok,* until he succeeded in setting aside the results of the process.) The district court therefore correctly ruled that Walker's complaint did not meet the standards of § 1915(d) on these matters.

■ Walker's complaint against Dinning, however, requires further attention. Construing his *pro se* complaint generously, *Jackson v. Duckworth,* 112 F.3d 878, 881 (7th Cir.1997), he is arguing that the deprivation of good time that resulted from the disciplinary proceeding is unrelated to his dispute with Dinning—as he must in order to avoid the same *Heck/Balisok* bar to this part of his complaint. (The question whether the harassment complaint is so related is an issue, however, that must be resolved before the case proceeds any further on remand.) On that understanding, we must reach the district court's state action ruling. The court was mistaken to conclude that Dinning was not acting under color of state law simply because the particular actions she took "pursued her own interests." In *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), the Supreme Court explained that to be "acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49, 108 S.Ct. at 2255 (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). The Court further noted in *West* that "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *Id.* at 49–50, 108 S.Ct. at 2255. See also *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945); *David v. City and County of Denver,* 101 F.3d 1344, 1353–54 (10th Cir. 1996) (plaintiff has burden of establishing the existence of a nexus between the defendant's conduct and the defendant's state authority in order to demonstrate that defendant's action was taken under color of state law); *Annis v. County of Westchester,* 36 F.3d 251, 254 (2d Cir.1994) (police officers "conducting themselves as supervisors for a public employer" were acting under color of state law when they allegedly engaged in sexual harassment of subordinate).

Walker alleges that Dinning abused her state-conferred position of correctional counselor by engaging in sexually harassing behavior. His complaint also implies that the reason she was able to take the actions she did was because of her state authority. The first alleged incident occurred because he went to her for help in her capacity as counselor. *Cf. Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir.1996) (color of state law rejected because defendant was acting in capacity as union president, not as fire department lieutenant, when actions occurred). The other alleged incidents were possible only because Dinning had access to Walker in his cell and in the shower area as a result of her official position. Whether or not she then

took the alleged actions "in pursuit of her own interests," she was able to do so solely because of the position of authority she enjoyed. Thus, Walker's allegations were sufficient for purposes of § 1915(d) to satisfy the state action element of the § 1983 claim he was attempting to bring against Dinning in her individual capacity.

The Illinois Attorney General, who filed a brief as *amicus curiae* at this court's request because none of the defendants has ever been served given the posture of the case, does not argue that the district court correctly interpreted the meaning of state action under § 1983. Instead, he suggests that we remand the case for reconsideration in light of our decision in *Pickrel v. City of Springfield*, 45 F.3d 1115 (7th Cir.1995). We see no need to do this, however, particularly because the case at this point presents only legal issues that we review *de novo* in any event. We note as well that, because we are proceeding under the pre-PLRA version of § 1915, it has not been necessary for us to decide definitively whether or not Walker's complaint against Dinning states a claim upon which relief can be granted for purposes of Fed.R.Civ.P. 12(b)(6). *Cf. Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (an action is frivolous for § 1915(d) if it lacks an arguable basis either in law or in fact, but this standard is not automatically co-extensive with dismissal under 12(b)(6)); *Denton v. Hernandez*, 504 U.S. 25, 32, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992) (further distinguishing between IFP dismissals and those under Rule 12(b)(6)).

Walker's allegations appear to satisfy the threshold standard for sexual harassment claims in a § 1983 case. See, *e.g., Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir.1994); *Pontarelli v. Stone*, 930 F.2d 104, 113–14 (1st Cir.1991); *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir.1989); *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1187 (7th Cir. 1986) (all cases involving § 1983 sexual harassment claims sufficiently strong to survive challenge on appeal). See also *Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir.1995) ("... a prisoner has a remedy for deliberate harassment, on account of sex, by guards of

either sex"). Nevertheless, out of concern for Dinning's rights and taking into account the procedural posture of the case, we express no final opinion on that question, nor do we prejudge the outcome of any defenses she might raise, such as qualified immunity. See *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir.1992) (finding police officers entitled to qualified immunity in § 1983 case alleging sexual harassment as an equal protection violation). Dinning, recall, has never been served and has never had the opportunity to contest the sufficiency of Walker's complaint. See *Hutchinson*, 126 F.3d at 899–900 On remand, because we have reversed the denial of IFP status, the complaint will be filed and she will have that opportunity once she is served.

We accordingly AFFIRM the dismissal of all claims against Warden Furrie and Bill Estes, we AFFIRM the dismissal of Walker's due process claims against Debbie Dinning, and we REVERSE the denial of IFP status with respect to his sexual harassment claim against Dinning for further proceedings consistent with this opinion.