139 F.3d 901
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Fabio A. DIAZ, Plaintiff-Appellant,
v.
Daniel R. MCBRIDE, Wait Moore, Brenda Koker, and E. Huff,
Defendants-Appellees.
 No. 96-2515.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 19, 1998[1].
Decided Mar. 3, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. No. 3:94cv1027 RM Robert L. Miller, Jr. Judge.
 Before Hon. THOMAS E. FAIRCHILD, Hon. FRANK H. EASTERBROOK, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Fabio Diaz, then an Indiana inmate[2], filed a civil rights action pursuant to 42 U.S.C. § 1983 against various prison officials, raising First, Eighth, and Fourteenth Amendment challenges to two prison disciplinary proceedings for violating a prison regulation prohibiting the possession of over $50, and attempting to mail money out of the prison, which charges he contends were brought against him in retaliation for his writing letters to government and prison officials complaining about prison employees' corruption and drug dealing. The district court granted summary judgment for defendants, and Diaz appeals.
 
 
 2
 In 1994, Diaz began a letter-writing campaign, accusing prison employees of drug dealing and corruption. Indiana Department of Corrections Director Walter Moore instructed him, "when you have something that can be verified please feel free to contact [prison staff] to make your information known." Diaz states that he then began "collecting" money used in drug deals as proof of the corruption.
 
 
 3
 On November 30, 1994, the prison mail room supervisor found $200 in Diaz's outgoing mail, included with a letter written in Spanish which stated, "Here is another 200 and I'm waiting till you call on Thursday and I hope that you received the other 100." Diaz later told investigators that $150 was meant for his daughter in college, and $50 was "going to a man in Indianapolis." A search was conducted of Diaz's cell, and an additional $125 was found in letters received from his wife and friends, and the letters and money were confiscated. Diaz was placed in administrative segregation pending an investigation and hearing. Diaz explained that he was conducting an investigation and collecting evidence of corruption, and asserted that only $45 was real money; the rest was counterfeit. Diaz also complained that there was other cash taken from him, but it was not reported by the guards.
 
 
 4
 After a hearing, Diaz was found guilty of possession of over $50, and was sentenced to the 13 days he had already served in segregation.[3] Approximately one week later, following a hearing, Diaz was found guilty of attempting to mail money out of the prison. The disciplinary hearing committee's report indicates that he lost 90 days' earned credit time.
 
 
 5
 Under Edwards v. Balisok, 520 U.S. 641, ----, 117 S.Ct. 1584, 1587, 137 L.Ed.2d 906 (1997), before a civil rights action can be brought, the underlying disciplinary conviction must be invalidated or overturned if a judgment in the plaintiff's favor would necessarily imply the invalidity of the underlying disciplinary conviction and sentence. See also Heck v. Humphrey, 512 U.S. 497, 486-87 (1994); Stone-Bey v. Barnes, 120 F.3d 718, 721 (7th Cir.1997).
 
 
 6
 Diaz concedes that he has never filed a habeas corpus petition in regard to these disciplinary charges, but argues that Edwards and Heck do not apply because he has already "served the [segregation] time and seeks no release." It is not necessary for the application of the Edwards bar to seek the restoration of good time credits; it is enough to seek monetary damages. Walker v. Taylorville Correctional Center, 129 F.3d 410, 413 (7th Cir.1997); Lewis v. Richards, 107 F.3d 549, 555 (7th Cir.1997). Thus, the Edwards bar applies here to Diaz's procedural due process claims. These claims are not yet cognizable under § 1983 and should have been dismissed without prejudice.[4] See Stone-Bey, 120 F.3d at 723.
 
 
 7
 Diaz also claims that the disciplinary charges were brought in retaliation for his letter-writing campaign against prison corruption. It is true that prison officials may not retaliate against an inmate for exercising his constitutional right to seek access to the courts or file grievances. Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir.1987). Retaliation is typically shown by establishing a chronology of events from which retaliatory motive can be inferred. Black v. Lane, 22 F.3d 1395, 1399 (7th Cir.1994). Diaz, however, admits possession of the money, and admits attempting to mail money out of the prison. (In fact, he states that he had more money than was confiscated, but guards took it without making any report.) He explained that the possession of this money resulted from his investigation, notwithstanding the fact that the money was not seized by guards while Diaz was in the process of attempting to mail it to, or otherwise turn it over to, authorities. This evidence so seriously undermines his claim of retaliation that no verdict could stand in his favor.
 
 
 8
 Diaz next argues that he was deprived of property without due process of law in violation of the Fourteenth Amendment when guards confiscated letters from Diaz's wife and friends. A prisoner making claims of property loss has an adequate post-deprivation remedy in the state courts and therefore cannot use a federal § 1983 action to pursue that claim. Hudson v. Taylor, 468 U.S. 517, 531-36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), Parratt v. Taylor, 451 U.S. 527, 535-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Diaz states that he sought the return of his property in the Indiana state courts, but missed the statute of limitations deadline by one day. The state's two-year statute of limitation does not render it an inadequate remedy. See Albright v. Oliver, 510 U.S. 266, 285, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Kennedy, J., concurring); Daniels v. Williams, 474 U.S. 327, 342 (1986) (Stevens, J., concurring); Williams v. St. Louis Co., 812 F.2d 1079, 1083 n. 5 (8th Cir.1987). He had two years to avail himself of an adequate post-deprivation remedy under the Indiana Tort Claims Act, Ind.Code § 34-4-16.5. Consequently, no relief can be granted under § 1983.
 
 
 9
 Diaz argues that his missing the statute of limitations deadline was caused by defendants' refusal to release him from segregation, and denying him access to legal materials and the prison law library. This brings us to Diaz's claim that his First Amendment right of access to the courts was violated when he was held in segregation for 13 days. See Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). This brief period of time was not the type of "direct, substantial, and continuous" limitation which would violate Diaz's right of access to courts. Jenkins v. Lane, 977 F.2d 266, 268-69 (7th Cir.1992).
 
 
 10
 Finally, Diaz raises an Eighth Amendment claim that during his time in administrative segregation he was denied recreation and exercise which caused his muscles to atrophy and worsened his heart condition, and defendants show "a total unconcern for my welfare in the face of serious risks." Diaz offers no evidence that comes even close to suggesting that during the 13 days in administrative segregation his health was seriously threatened, or that defendants were deliberately indifferent to his health. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).
 
 
 11
 Accordingly, the judgment of the district court is MODIFIED to show dismissal of the procedural due process claims without prejudice, and as so modified is AFFIRMED in all other respects.
 
 
 
 [1]
 After an examination of the appellant's brief and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [2]
 Diaz has since been released from prison and deported
 
 
 [3]
 Diaz was in segregation from November 30 until December 13, 1994
 
 
 [4]
 Diaz's due process claims include insufficient notice that holding over $50 was prohibited; failure to review his segregation status every five days; failure to hold a disciplinary hearing within seven days; insufficient evidence that he had more than $45 in real money; placement in segregation pending an investigation and hearing; failure to produce the actual money at the hearing; and the guards' confiscating $200 without reporting it