165 F.3d 31
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Dwayne F. BECTON, Plaintiff-Appellant,
v.
George WALKER, et al., Defendants-Appellees.
 No. 97-3015.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 27, 1998.*
Decided Aug. 28, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois, Peoria Division. No. 97 C 1060. Michael M. Mihm, Chief Judge.
 Before Hon. RICHARD A. POSNER, Hon. WILLIAM J. BAUER, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 Dwayne Becton is an inmate at the Danville Correctional Center in Danville, Illinois. The defendants are employees of the Illinois Department of Corrections. Becton brought a civil rights action under 42 U.S.C. § 1983, alleging that the defendants violated his due process rights by convicting him of sexual misconduct in a procedurally-defective disciplinary hearing, and by subsequently disciplining him. Concluding that "no due process was constitutionally required" in order to impose the challenged sanctions, the district court dismissed without prejudice. Becton appeals. We affirm the district court's judgment, but we do so without reaching the issue of due process. Because the incident underlying Becton's suit was the subject of prison disciplinary proceedings the result of which would be invalidated were Becton to prevail, Becton's claim has not accrued.
 
 BACKGROUND
 
 2
 In 1996, Becton was incarcerated at the Pontiac Correctional Center. On February 29, he was visited by family members including his mother, his brother, his daughter and Rena Davis, the child's mother. Becton was handcuffed. Observing what he believed to be sexual contact between Becton and Davis, Officer George Walker terminated the visit prematurely. That evening, Walker wrote an incident report charging Becton with sexual misconduct. Walker alleged that he had observed Davis stroking Becton's penis.
 
 
 3
 In March 1996, Becton appeared before an adjustment committee to contest Walker's charges. The committee found Becton guilty and sanctioned him with three months' segregation and demotion to C-grade status for six months. Following this decision, Louis Lowery, assistant warden for operations, wrote to Davis informing her that she was permanently barred from visiting Becton; Lowery also sent a copy of this letter to Becton.
 
 
 4
 Becton grieved the sanctions. He claimed that milk had been spilled on his shirt during the visit and that, on account of his handcuffs, Davis was merely assisting him by wiping his shirt. A grievance officer recommended denying the grievance, and Becton appealed to an administrative review board. The board asked him to submit to a polygraph test. Becton agreed. The results were inconclusive, and the review board denied Becton's grievance.
 
 
 5
 In May 1997, Becton filed his federal complaint. He sought damages from Walker and various other prison officials, claiming that the procedures used during the disciplinary hearing had violated his due process rights. The district court reasoned that three months of segregation and demotion to C-grade status for six months "did not significantly affect the duration or degree of [Becton's] restrictions," see Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and therefore concluded that "no due process was constitutionally required." With respect to the permanent ban on visits from Davis, the court stated that it was "satisfied that [Becton] was provided with [sufficient] procedural safeguards." Accordingly, the court sua sponte dismissed Becton's action. It did so without prejudice, however, apparently concluding that Becton had stated "pendent state tort claims" by alleging that the cancellation of Davis' visitation rights had caused him emotional distress. See 28 U.S.C. § 1367(c)(3).
 
 ANALYSIS
 
 6
 A prisoner's § 1983 claim is not cognizable when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck v. Humphrey, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). It is well established that this rule applies to judgments in prison disciplinary proceedings. See Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997); Lusz v. Scott, 126 F.3d 1018, 1021 (7th Cir.1997); Stone-Bey v. Barnes, 120 F.3d 718, 721-22 (7th Cir.1997).
 
 
 7
 Becton contends that the district court erred, because a claim should not be dismissed unless no set of facts could entitle the plaintiff to relief. In support of his stance, Becton submits affidavits from three of his visitors--Davis, his mother and his brother--attesting to the veracity of his version of the disputed incident. It is true that " 'a suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim.' " Gutierrez v. Peters, 111 F.3d 1364, 1367 n. 2 (7th Cir.1997) (quoting Graehling v. Village of Lombard, 58 F.3d 295, 297 (7th Cir.1995)). But a court need not consider whether a complaint succeeds in stating a claim that has not accrued. Heck instructs that the district court must "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his ... sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the ... sentence has already been invalidated." 512 U.S. at 487. Until the sentence has been invalidated, the cause of action for damages simply "does not accrue." 512 U.S. at 490.
 
 
 8
 Becton argues that four alleged shortcomings tainted the disciplinary process and violated his due process rights: the defendants (1) were biased against him; (2) convicted him solely on Walker's testimony without considering his own; (3) refused to allow him to examine a videotape of the underlying incident; and (4) did not give him an adequate written statement of the reasons or evidence underlying their decision. If verified, the first three of these alleged procedural flaws would necessarily imply the invalidity of Becton's disciplinary conviction. See Balisok, 117 S.Ct. at 1588 (bias); Lusz, 126 F.3d at 1023 (lack of any "reliable evidence" in prison disciplinary hearing record would imply invalidity of sanctions); Sweeney v. Parke, 113 F.3d 716, 719 (7th Cir.1997) (qualified right to put forth exculpatory evidence is central to due process); Mendoza v. Miller, 779 F.2d 1287, 1296 (7th Cir.1985) (exculpatory evidence rule insures "that the trier of fact considers all relevant evidence in reaching a conclusion as to ... guilt or innocence"). In and of itself, the fourth alleged flaw might not necessarily impugn the results of the disciplinary hearing, see Balisok, 117 S.Ct. at 1589 (Ginsburg, J., concurring (joined by Justice Souter and Justice Breyer)), but Becton's contention about the lack of written reasons is intertwined with his other contentions and nowhere does he argue that this case should proceed on the basis of the "lack of written explanation" claim alone. See Stone-Bey, 120 F.3d at 722 ("[Becton] is not so much concerned with the alleged lack of a written statement of reasons as he is with the alleged lack of any reliable evidence to support [the] finding of guilt."). Thus, we conclude that a judgment in favor of Becton would necessarily imply the invalidity of the sanctions imposed on him as a consequence of his disciplinary hearing. It follows that his cause of action for damages has not accrued. The district court simply should not have reached the merits of Becton's due process claim.
 
 
 9
 Finally, Becton sought damages for the restriction of his visiting rights. Although this sanction appears to have been ordered by warden Lowery rather than by the adjustment committee directly, Becton's statement of facts treats it as another sanction arising from his disciplinary hearing; nowhere does he suggest that we envisage it in any other manner. Again, a judgment in Becton's favor would imply the invalidity of his disciplinary conviction. Accordingly, Heck acts as a bar. Under these circumstances, we can only conclude that the defendants were entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c).
 
 
 10
 Becton cannot "use a suit for damages to get around the procedures that have been established for challenging the lawfulness of continued confinement." Miller v. Indiana Dept. of Corrections, 75 F.3d 330, 331 (7th Cir.1996). Since the district court granted summary judgment to the defendants without prejudice, that judgment is
 
 AFFIRMED
 
 
 *
 After an examination of the briefs and record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 *
 Although the district court's dismissal of an action without prejudice generally does not qualify as a final decision within the meaning of 28 U.S.C. § 1291, "we note that this court has not accorded talismanic importance to the fact that a complaint ... was dismissed 'without prejudice.' " United States v. City of Milwaukee, 144 F.3d 524, 528 n. 7 (7th Cir.1998). "[W]hen it is clear that the court below found that the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make," the dismissal is final and appealable. Id. (internal citation omitted). Here, the district court's conclusion that Becton failed to allege a protected liberty interest necessarily implies that the court found that his action could not be "saved." Therefore the district court's decision was final